IN THE MATTER OF KATHRYN SUSAN CASTILLO, A MINOR CHILD

No. 8416DC706

(Filed 19 March 1985)

**1. Parent and Child § 1.6— termination of parental rights—consideration of prior adjudication of neglect—prior order finding child no longer neglected**

   The trial court could properly consider a prior adjudication of neglect in ruling on a later petition to terminate parental rights on the ground of neglect even though the prior adjudication of neglect had been followed by an order adjudging the child to be no longer neglected. Furthermore, the order adjudging the child to no longer be neglected and returning custody to respondent did not terminate the actions so that the order of neglect could not be used to prove a fact in issue in a proceeding to terminate parental rights. G.S. 7A-664.

**2. Parent and Child § 1.6— termination of parental rights for neglect of child— sufficiency of evidence**

   The evidence and findings supported the trial court's order terminating respondent's parental rights for neglect of her child in that she had failed to provide proper care for the child and had repeatedly placed the child in an environment injurious to her welfare.

APPEAL by respondent from *Gardner, Judge*. Order entered 10 February 1984 in District Court, SCOTLAND County. Heard in the Court of Appeals 14 February 1985.

This cause involves a proceeding to terminate parental rights of the respondent appellant, Rebekah Smith, in her minor child. The child's father, Jonathan R. Castillo, Jr., from whom respondent is divorced, has previously executed a release consenting to the placement of the child for adoption. A petition was filed on 30 August 1983 by the Scotland County Department of Social Services seeking the termination of the parental rights of the mother by reason of neglect. The guardian ad litem for the minor child filed a response joining in the petitioner's prayer for relief that parental rights be terminated. The respondent filed a response denying that she had neglected the child within the meaning of G.S. 7A-517(21) and seeking dismissal of the petition. A hearing was held on 19 and 20 December 1983 and an order entered on 10 February 1984 terminating parental rights of the respondent. Respondent appealed.

*Johnston & McIlwain, P.A., by Edward H. Johnston, Jr., for petitioner appellee.*

*Jennings Graham King, for respondent appellant.*

*Etheridge, Moser and Garner, P.A., by Terry R. Garner, guardian ad litem for Kathryn Susan Castillo.*

MARTIN, Judge.

The respondent assigns as error the trial court's determination that her parental rights should be terminated by reason of her neglect of her minor child. She contends that the trial court erred in admitting and considering evidence of a prior adjudication of neglect and that the evidence was insufficient to support the court's findings of fact and conclusions of law that the child was a neglected child within the meaning of G.S. 7A-517(21). We have carefully considered her contentions and find them to be without merit. We therefore affirm the order terminating her parental rights.

Evidence at the lengthy hearing before Judge Gardner revealed that the minor child, Kathryn Susan Castillo, was born 29 January 1978. Subsequently, respondent and the child's father separated and on 19 June 1979 the child's paternal grandfather filed a juvenile petition alleging that the child was neglected. On 10 August 1979 an order was entered in the District Court of Scotland County by Judge B. Craig Ellis adjudicating the child to be a neglected child. Judge Ellis found, inter alia, that the child was not properly cared for in that she was "dirty, nearly filthy, in wet diapers smelling of urine, improperly clothed in the wintertime . . . in her home which had no heat . . . . In addition to this she has not been fed regularly or properly and . . . has just generally been neglected." Judge Ellis further found that respondent and the child's father were separated, that the father had not provided the child with adequate food, care or support, that respondent admitted that she slept regularly with another male to whom she was not married in the house where she resided with the child, and that the mother had not properly fed or clothed the child. He concluded that the child was neglected and he placed her in the custody of the Scotland County Department of Social Services (hereinafter "DSS"). At a review hearing on 14 December 1979 Judge Ellis found that the respondent had been visiting the child and had made efforts to improve the condition and care

of the child. He continued custody in DSS but provided that the child could reside with respondent. Respondent moved to the state of Washington and remained there until July 1980, when she returned to Scotland County and married Thomas Smith. On 21 October 1980 Judge Ellis found that the respondent and Thomas Smith were providing a suitable home for the child, that she was being properly fed, clothed and cared for, and that she was no longer a neglected child. Custody was returned to the respondent.

Early in January 1981 respondent contacted DSS and reported that she and her new husband had separated because she was afraid that he would harm her or the minor child. She reunited with him three weeks later. In April 1981 respondent reported that Thomas Smith had abused the child and requested the assistance of DSS in getting away from him. A social worker observed a bruise on the child's cheek. Respondent took the child and went to Florida but returned in November 1981 and reunited again with Thomas Smith. The social worker referred respondent and her husband to mental health counseling but they failed to keep the appointment. On 12 January 1982, the social worker filed a petition alleging that the child was neglected due to the history of abuse by Thomas Smith and the failure of respondent and Mr. Smith to attend counseling. On 22 March 1980 Judge Ellis continued custody in the respondent on the condition that she and Mr. Smith submit themselves to the Mental Health Clinic for counseling. Shortly thereafter, Mr. Smith assaulted respondent again and respondent left home with the child and went to live with her former husband and his new wife. She returned to Mr. Smith, leaving the child with her former husband, the child's father. The case was returned to court for review on 6 May 1982 and Judge Ellis found that respondent had voluntarily placed the child with the father and that it would be dangerous for the child to live with respondent. He placed custody of the child in the father. Subsequently, due to marital friction between the child's father and his second wife, the father contacted DSS and placed the child in a boarding home. On 3 September 1982 Judge Ellis placed custody of the child in DSS.

The child remained in foster care until 20 May 1983, when DSS was authorized to permit the child to reside with respondent. This change was made upon findings that respondent had at-

tended mental health counseling, was making efforts to provide for the child, had become gainfully employed and that Mr. Smith was no longer a bad influence in the home due to his having received an active prison sentence.

In July 1983 the electricity to the rented mobile home, where respondent was living with the child and her current boyfriend, was disconnected due to nonpayment of the electricity bill. Respondent stopped paying rent and moved out of the mobile home, though she had no permanent housing arranged for herself or the child. She and the child resided for brief periods of time with various persons. Respondent's boyfriend, Mitchell Weatherford, spent the night with her on several occasions during this period. Weatherford also assaulted the respondent in the child's presence on one or more occasions. On the night of 17 August 1983, the minor child, respondent, Weatherford, and another adult male were found by a deputy sheriff sleeping on the floor of a trailer at an elementary school in Laurinburg. Respondent was arrested and the child was taken into protective custody by DSS and placed in foster care. At that time, the child had very little clothing, was dirty and had mosquito bites on her legs. The petition to terminate parental rights was filed shortly after respondent's arrest. At the time of the hearing in December 1983, respondent was residing with Weatherford, though she was not married to him.

Upon this evidence, Judge Gardner made extensive findings of fact which chronicled the minor child's history and the respondent's conduct from 1979 until the time of the hearing. In addition to his own findings made from the evidence and the court file, he adopted findings made by Judge Ellis in the initial order adjudicating the minor child to be neglected, in the 1980 order returning custody to respondent, and in the several review orders entered in this case between 1979 and 20 May 1983 when the minor child was last placed in respondent's care. More importantly, he made detailed findings as to the events which had occurred from 20 May 1983 until 30 August 1983 when the petition was filed. After doing so, Judge Gardner perceived a pattern of conduct which he described within the following order:

54. The Court finds that this matter, and the matter of the care, supervision, discipline and environment of Kathryn

Susan Castillo has repeatedly been brought before this Court, and the respondent has repeatedly assured the Court of her intention to be a responsible parent, and to properly care for the child.

55. That notwithstanding the repeated promises and assurances of the respondent, Rebecca Smith, she has neglected the child, and refused to properly care for the child. That, as noted by the guardian in this case, the Court notes a pattern on the part of the respondent to embark for a short period of time upon a course of responsible parenthood, after which she lapses into irresponsibility, by associating herself with males who have assaulted and abused her in the presence of her minor child, and other conduct detrimental to the child.

. . .

57. That, notwithstanding the fact that she was gainfully employed on a fulltime basis, in the summer of 1983, the respondent, in failing to maintain a home for the child failed in the economic aspect of parenthood, and failed to provide for the physical needs of the child. At the same time, she was residing with a man not her husband, and living openly with him, and the combination of failing to provide a permanent home for the child, and living with a man not her husband openly in the presence of the child is evidence of such clarity and degree that the Court can only conclude that the respondent's relationship with the child lacks the essential ingredients of love, affection, and parental regard that distinguish the relationship from and raise it above an economic transaction.

. . .

62. The Court further finds that it would be in the best interest of the aforesaid minor child for the parental rights of the respondent, Rebecca Smith, to be terminated, so that the said child may be placed eventually in a permanent home, where she can have a stable and permanent home environment, and where the said child can have the maximum opportunity to develop into a mature and responsible adult.

63. The Court further finds that, because of the respondent's history of irresponsibility, illicit relationships with men,

instability, and repeated moves from one place to another, it would be contrary to the child's best interest to ever return the said child to the custody of the respondent, and that to do so would be injurious to the said child.

Judge Gardner concluded that respondent had failed to provide proper care for the child, had repeatedly placed the child in an environment injurious to her welfare, and that, therefore, the child was a neglected juvenile as defined by G.S. 7A-517(21). Neglect being a statutory ground for termination of parental rights under G.S. 7A-289.32(2), Judge Gardner concluded that an order should be entered terminating the parental rights of the respondent with respect to the minor child.

[1]  Respondent first contends that Judge Gardner erred in admitting into evidence the adjudication of neglect entered 10 August 1979 because the later order of 21 October 1980 returning custody to respondent (1) "cured" the earlier condition of neglect, and (2) rendered that evidence so remote as to be of no probative value. We do not agree.

The North Carolina Supreme Court has ruled that the trial court may consider a prior adjudication of neglect in ruling on a later petition to terminate parental rights on the ground of neglect. *In re Ballard*, 311 N.C. 708, 319 S.E. 2d 227 (1984); *In re Moore*, 306 N.C. 394, 293 S.E. 2d 127 (1982), *appeal dismissed*, 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed. 2d 987 (1983). The Court stated in *Ballard*, *supra* at 714, 319 S.E. 2d at 231-32; "Certainly, termination of parental rights for neglect may not be based solely on conditions which existed in the distant past but *no longer exist*." (emphasis supplied.) However, the Court went on to say that "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and *the probability of a repetition of neglect*." *Id*. at 715, 319 S.E. 2d at 232. (emphasis supplied.)

Although neither *Ballard* nor *Moore* involved the situation where, as here, a prior adjudication of neglect had been followed by an order adjudging the child to no longer be neglected, we believe that the rationale for the rules stated in those cases is applicable in the case *sub judice*. There was ample evidence that the minor child did not receive proper care and lived in an environment injurious to her welfare at the time of the original adjudica-

In re Castillo

tion of neglect. The evidence also showed that after custody was removed from respondent, she made efforts to improve her ability to care for the child and to avoid the types of conduct which had led to her loss of custody. When custody was restored, her efforts ceased and she resumed her former lifestyle. This pattern of conduct was repeated by respondent after each loss of custody and after each order of the court permitting the child to reside with her. The evidence was sufficient to warrant the court's finding that the respondent ". . . has not provided a permanent and stable home environment for the . . . minor child," and its determination that the conditions which had existed in the past continued to exist and, in all probability, would be repeated in the future if parental rights were not terminated. Though the neglect found by the 1979 order was in remission when custody was returned in 1980, it had not been "cured" and its existence was highly probative on the issue of its recurrence. It is clear that Judge Gardner based his decision to terminate parental rights upon the best interests of the minor child and the fitness of the respondent to care for her at the time of the hearing, in light of all evidence of neglect and the probability of its repetition.

Respondent also contends that the 1980 order adjudging the child to no longer be neglected and returning custody to respondent terminated the action and rendered it a separate action so that the order of neglect could not be used to prove a fact in issue in the proceeding to terminate parental rights. We find no merit in this contention. G.S. 7A-664(c) provides:

In any case where the judge finds the juvenile to be . . . neglected . . . the jurisdiction of the court to modify any order or disposition made in the case shall continue during the minority of the juvenile or until terminated by order of the court.

No order has been entered terminating the jurisdiction of the court over this proceeding.

[2] Finally, respondent contends that the findings of fact are insufficient to support the conclusion of law that the minor child is a neglected child as defined by the statute, and that the findings are not supported by clear, cogent and convincing evidence. We have examined the record and the transcript of the testimony. Each finding of fact is more than amply supported by clear,

cogent and convincing evidence; as to many facts the evidence was uncontradicted, others were admitted by respondent. These findings were sufficient to support the conclusion that the child was neglected.

We hold that the trial court complied with the statutory provisions with respect to termination of parental rights for neglect and properly found that respondent's parental rights should be terminated. The order appealed from is therefore

Affirmed.

Judges WEBB and PHILLIPS concur.