786 P.2d 699

**In the Matter of the Termination of Parental Rights with Respect to KENNY F., a Child.**

**HELEN F., Respondent–Appellant,**

v.

**STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT, Petitioner–Appellee.**

**No. 11069.**

Court of Appeals of New Mexico.

Jan. 4, 1990.

Frederick H. Sherman, Sherman and Sherman, P.C., Deming, for respondent-appellant.

Kent J. Cooper, Jeffreys, Cooper & Associates, Deming, Guardian Ad Litem.

Dale S. Morritz, Asst. Gen. Counsel, Human Services Dept. Office of Gen. Counsel, Albuquerque, for petitioner-appellee.

## OPINION

HARTZ, Judge.

Mother appeals the district court's judgment terminating her parental rights to Kenny F. She contends that venue was improper, that she was denied due process and equal protection, and that the state failed to prove the statutory requisites for termination. Issues listed in her docketing statement but not briefed are deemed abandoned. *See State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). We affirm.

## I.  FACTS

Kenny is the second oldest of mother's four children.  In February 1983 the Human Services Department (the Department) filed a neglect action (CH 83–04) against mother in Hidalgo County as to all four children.  After mother entered a plea of no contest to the allegations in the neglect petition, the Department obtained custody of the children.  Kenny has been in foster care continuously since February 1983.  The oldest child was returned to mother's custody in April 1984.

The Department filed a petition (SA 86–02) in Hidalgo County in August 1985 to terminate mother's parental rights to her three youngest children.  In its December 1986 judgment the district court found that mother had failed to furnish proper parental care, control, or subsistence to the children and that the causes and conditions leading to the neglect were "unlikely to change in the foreseeable future despite reasonable efforts of the Department ... or other agency to assist [mother] in trying to adjust the psychological and emotional conditions which have rendered her unable to properly care for her children."  The district court terminated mother's parental rights to her two youngest children, but did not terminate her parental rights to Kenny because there was no plan or probability that he would be adopted.  The district court did, however, continue legal custody of Kenny in the Department.  Both parties appealed the judgment to this court.  We summarily affirmed when neither party responded to our initial calendar notice.  *State ex rel. Human Servs. Dep't v. Helen F.*, Ct.App.No. 9749 (Memorandum Opinion filed February 24, 1987) (*Termination Hearing I*).  We intimate no view with respect to the merits of the issues raised in that appeal.

In its March 1987 order on periodic review of the negligence case (CH 83–04) the district court, noting that mother had made no effort to maintain contact with Kenny, approved a treatment plan providing that the Department would seek termination of her parental rights with respect to Kenny.  The order also denied her visitation rights to Kenny, continuing a denial instituted by order in October 1985, when the district court ruled that visitation was harmful to the children not in her custody.  The district court later entered two more orders, one in January 1988 and the other in June 1988, providing that mother could request the Department to allow her to visit Kenny.  Mother never requested such visitation.

In June 1988 the Department filed in Hidalgo County another application in SA 86–02 to terminate mother's parental rights to Kenny on the grounds of neglect and disintegration of the parent-child relationship.  *See* NMSA 1978, § 32–1–54(B)(3), (4) (Repl.Pamp.1989).  The district court conducted the hearing on this application in Grant County on August 30, 1988.  On November 4, 1988, the district court ordered termination of mother's parental rights to Kenny.  From this order mother appeals.

## II.  VENUE

■ Mother claims that venue for the termination hearing was improper in Grant County and that the hearing should have been held in Hidalgo County.  Grant and Hidalgo Counties are part of the same judicial district.  *See* NMSA 1978, § 34–6–1(F) (Repl.Pamp.1981).  The courthouses in the two counties are less than fifty miles apart.  Mother claims that venue for the termination hearing in Grant County was improper because Kenny and mother both resided in Hidalgo County.  *See* NMSA 1978, § 32–1–55(A) (Repl.Pamp.1989) (venue for proceeding to terminate parental rights shall be in the court for the county in which the child is physically present or in the county from which the child was placed).

Whatever the merits of mother's legal argument, she waived her claim of improper venue.  Although mother asserts that she orally objected to venue in Grant County prior to the periodic review hearing in CH 83–04 on July 12, 1988, and the termination hearing in SA 86–02 on August 30, 1988, the transcripts from those hearings show that no claim was made that the hearing in Grant County would violate a

venue statute. The thrust of the arguments at these hearings was that holding the hearings in Grant County violated mother's due process rights, a claim we consider below. Ordinarily, we will not reverse the district court on a ground that the district court was not asked to consider. *See State v. Aguilar*, 98 N.M. 510, 650 P.2d 32 (Ct.App.1982). This is not a technical matter, but a matter of sound policy. If mother's counsel had specifically pointed to the venue statute in arguing against holding the hearing in Grant County, any error could have been corrected promptly. The trial judge may have vacated the hearing and set a new hearing shortly thereafter in Hidalgo County. In contrast, if we were now to reverse the judgment below because of the venue argument that has been raised for the first time on appeal, we would inordinately delay a resolution of the merits of this case. Uncertainty in matters of custody and parental rights can only harm the child, whose interests are paramount in these disputes. That uncertainty should be resolved as soon as possible. For that reason, children's court matters receive the highest priority before this court. Because of mother's failure to raise her venue-statute objection at a time when any error could have been cured promptly, we refuse to consider the argument on appeal.

## III. DUE PROCESS

The essence of procedural due process in this context is a fair opportunity to be heard and present a defense. *See In re Miller*, 88 N.M. 492, 498, 542 P.2d 1182, 1188 (Ct.App.1975). Mother claims first that her right to due process was violated because her poverty prevented her from attending the hearing in Grant County to present her case. Mother's brief contends that the Department never contacted her to make arrangements for her to be at the termination hearing. She asserts that the Department did no more than make several unsuccessful attempts to contact her by telephone, and that such efforts were insufficient. The transcript from the termination hearing does not support this contention. The Department's social worker testified that she informed mother of the hearing and offered to provide her with a ride or with money to make other arrangements. Mother never recontacted the social worker to seek assistance in attending the hearing. The social worker later telephoned mother (who had no telephone of her own) where she worked and at the homes of her mother and brother to make arrangements for her to be at the hearing, but no one answered the calls. Due process did not require the Department to do more.

Second, mother claims a violation of due process because her counsel did not receive prior to the hearing the report of an expert witness called by the Department, Dr. Caplan. Yet the district court could properly have found that her counsel had received the report. At the hearing the Department's counsel and social worker represented that the report had been mailed to mother's counsel and to the guardian ad litem; the guardian ad litem stated that he had received the report. A properly mailed document is presumed to have been received. *See Garmond v. Kinney*, 91 N.M. 646, 579 P.2d 178 (1978). Moreover, mother has failed to demonstrate how she was prejudiced by the Department's alleged failure to produce Dr. Caplan's report. *See State v. Tomlinson*, 98 N.M. 337, 648 P.2d 795 (Ct.App.), *rev'd in part on other grounds*, 98 N.M. 213, 647 P.2d 415 (1982). She claims an inability to cross-examine Dr. Caplan effectively with respect to the effect on Kenny of the sexual abuse committed against him by one of the other foster children in the home of the foster parents who hoped to adopt him. Mother's counsel, however, cross-examined Dr. Caplan and makes no showing of how that cross-examination was impeded by the alleged delayed disclosure of the report. Mother did not request a continuance because of the delayed disclosure. She sought only to strike all of Dr. Caplan's testimony. It is not reversible error to refuse to impose such a drastic sanction even though a less severe remedy, such as a continuance, may have been warranted if requested. *See id. Cf. Khalsa v. Khalsa*,

107 N.M. 31, 751 P.2d 715 (Ct.App.1988) (abuse of discretion to permit critically important undisclosed expert witness to testify after denying opposing party's request for opportunity to depose the expert).

Mother's final due process argument is that she should have been provided an expert witness to rebut Dr. Caplan. Yet her brief fails to point to anything in the record establishing that she made a request to the district court for such an expert witness. Therefore, her claim has been waived.

## IV. EQUAL PROTECTION

Mother also contends that she was denied equal protection of the laws because the district court terminated her parental rights based on her indigency. This claim is frivolous. The district court's findings and conclusions were founded on considerations other than mother's indigency. The conduct of mother that led to termination of her parental rights was not necessitated by her lack of income.

## V. INSUFFICIENCY OF THE EVIDENCE

Mother argues that the evidence at the hearing would not support termination of her parental rights under either Subpart (3) or (4) of Section 32–1–54(B).

### A. *Section 32–1–54(B)(3)—Neglect*

Section 32–1–54(B)(3) provides that parental rights should be terminated with respect to a minor child when:

(3) the child has been a neglected or abused child as defined in Section 32–1–3 NMSA 1978 and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions which render the parent unable to properly care for the child[.]

■ Mother claims that she could not be a neglectful parent because one of her children continues to live with her. Kenny, however, is younger than the child in mother's custody and was developmentally delayed. Mother's capacities and attitudes with respect to the two children could be very different. The only question before the district court was whether termination was proper as to Kenny, not as to the other child.

■ Mother also contends that the district court's judgment cannot be affirmed under this section because there is no evidence that after our decision in *Termination Hearing I* the Department made reasonable efforts to remove the conditions of neglect in mother's home. The reasonable-efforts requirement is a central feature of recent legislation governing the protection of children. The federal Adoption Assistance and Child Welfare Act of 1980 (Public Law No. 96–272) requires states receiving federal assistance to adopt plans providing that "reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it possible for the child to return to his home[.]" 42 U.S.C. § 671(a)(15) (1982). To provide guidance to trial judges and others on the meaning of "reasonable efforts"—which is not defined by either federal or New Mexico statute— the National Council of Juvenile and Family Court Judges, the Child Welfare League of America, the Youth Law Center, and the National Center for Youth Law have produced *MAKING REASONABLE EFFORTS: Steps for Keeping Families Together* (hereinafter "Guidelines").[1]

The Department does not seriously dispute that it made no real effort to preserve the family after *Termination Hearing I*. Its actions were directed toward placing Kenny for adoption. The reasonable-efforts requirement does not, however, compel unreasonable efforts. When it becomes clear that preserving the family is not compatible with protecting the child, further efforts at preservation are not required.

---

**1.** The booklet can be obtained by sending a self-addressed mailing label to: Office of Communications, Edna McConnell Clark Founda- tion, 250 Park Avenue, New York, New York 10177–0026.

The Guidelines acknowledge this possibility by recommending that each state and local child welfare agency develop written guidelines articulating "[c]riteria for determining when efforts to reunify a family are no longer appropriate." *Id.* at 101. Our prior decisions also have suggested that further efforts to assist the parents are not required when there is a clear showing that they would be futile. *See State ex rel. Dep't of Human Servs. v. Peterson*, 103 N.M. 617, 622–23, 711 P.2d 894, 899–900 (Ct.App.1985); *In re Doe*, 97 N.M. 69, 71, 636 P.2d 888, 890 (Ct.App.1981). *Cf.* NMSA 1978, § 32-1-38.1(F)(4) (Repl.Pamp. 1989) (at periodic review hearing for neglected or abused child, court may continue legal custody in the Department *without* parental involvement in a treatment plan). Nothing in our mandate in *Termination Hearing I* contradicts this proposition.

The judgment in *Termination Hearing I* contained the following finding:

> 5. The conditions and causes leading to the neglect [of mother's three youngest children] are unlikely to change in the foreseeable future despite reasonable efforts of the Department of Human Services or other agency to assist [mother] in trying to adjust the psychological and emotional conditions which have rendered her unable to properly care for her children.

Given such a finding, the statute would not require the Department to make any further efforts to assist mother in an attempt to reunite her with Kenny. Mother might at a later time show a change in her circumstances from which the court could conclude that reasonable efforts might succeed, *cf. State ex rel. Dep't of Human Servs. v. Natural Mother*, 96 N.M. 677, 634 P.2d 699 (Ct.App.1981) (change in circumstances required the Department to provide current evidence of parent's neglect); but a court could properly assume that in the absence of evidence of such a change the situation set forth in finding No. 5 would continue.[2] *Cf. State ex rel. Human Servs. Dep't v. Dennis S.*, 108 N.M. 486, 775 P.2d 252 (Ct.App.1989) (distinguishing *Natural Mother* because no significant change in circumstances).

■ Mother does not point to any evidence showing a change since *Termination Hearing I* that would indicate greater prospects for success of the Department's efforts to improve her parenting skills with respect to Kenny. Nor does she challenge the sufficiency of the evidence in *Termination Hearing I* to support finding No. 5. She does, however, appear to challenge the use of that finding in this proceeding. We need not decide in what circumstances a court may or must adopt a finding of fact from an earlier proceeding in the same case or a related case. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157, 89 S.Ct. 935, 942, 22 L.Ed.2d 162 (1969); *National Fire Ins. Co. v. Thompson*, 281 U.S. 331, 336–37, 50 S.Ct. 288, 290–91, 74 L.Ed. 881 (1930); *Bradley v. Milliken*, 620 F.2d 1141, 1147–50 (6th Cir.1980); *In re Castillo*, 73 N.C.App. 539, 327 S.E.2d 38 (1985); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478, at 799–800 (1981) ("Other issues may seem particularly unsuited to reconsideration. Questions of fact, absent significant new evidence, are primary examples." (Footnote omitted.)). The district court's adoption of findings from *Termination Hearing I* was invited by mother's attorney. When the Department called a witness to testify to matters predating the prior hearing, mother's attorney objected to "rehashing" the evidence and stated that he was not prepared to meet evidence from that time. The Department's attorney, pointing to his obligation to prove reasonable efforts, re-

---

**2.** We emphasize that there is a difference between (1) presuming that the mother's psychological and emotional condition is stable, so that there is a continuation of the absence of a duty to make further efforts, and (2) presuming that the efforts being made by the Department continue to be reasonable. We will not recognize the latter presumption. The Department's having made reasonable efforts during one period in the past does not imply that it continued to do so after that period. So long as the parent is a suitable candidate for reunion with the child, the Department must prove that it has continued to make reasonable efforts since the latest hearing at which the district court made a finding as to reasonable efforts.

quested a stipulation to the judgment in *Termination Hearing I*. Although mother's counsel did not explicitly stipulate, the judge announced that he would adopt findings from that proceeding—specifically mentioning finding No. 5—and mother's counsel did not object; the comments of mother's counsel were restricted to the weight such findings should have in the present proceeding. Thus, if mother had a valid objection to the district court's adoption of finding No. 5, she waived it. Reversal of the termination of parental rights in *State ex rel. Department of Human Services v. Perlman*, 96 N.M. 779, 635 P.2d 588 (Ct.App.1981) is distinguishable, because there (1) the parent preserved her objection and (2) the termination decree was based on a prior *void* neglect decree.

■ While the district court could draw the appropriate inferences from finding No. 5, it was not bound by the finding in *Termination Hearing I* that termination of parental rights as to Kenny was not in his best interests. That finding was explicitly predicated on the absence of any "plan or probability of this child being adopted"; yet by the time of the second termination hearing there was a clear opportunity for adoption of Kenny. In other words, the evidence at the hearing showed precisely the change in circumstances requiring a different result.

B. *Section 32–1–54(B)(4)—Disintegration of Parent–Child Relationship*

■ The district court's decision is also affirmable under Section 32–1–54(B)(4), which provides for termination of parental rights when:

(4) the child has been placed in the care of others, including care by other relatives, either by a court order or otherwise and the following conditions exist:

(a) the child has lived in the home of others for an extended period of time;

(b) the parent-child relationship has disintegrated;

(c) a psychological parent-child relationship has developed between the substitute family and the child;

(d) if the court deems the child of sufficient capacity to express a preference, the child prefers no longer to live with the natural parent; and

(e) the substitute family desires to adopt the child.

The district court's finding No. 31 supports termination pursuant to this provision. It reads:

Kenny has lived in the same foster home since January, 1987, and has developed a psychological parent-child relationship with his foster parents. Kenny does not desire to visit with [mother], and the parent-child relationship with her has disintegrated. The foster parents wish to adopt Kenny. [sic] and they are capable of furnishing a good home for him and to give him a permanent relationship of loving, caring parents.

Mother challenges those portions of the finding that state that Kenny does not desire to visit mother and that the parent-child relationship has disintegrated.

The Department's social worker testified that mother had never requested visitation with Kenny since the decision in *Termination Hearing I* and that mother had not contacted the Department regarding Kenny for more than two years. Dr. Caplan testified regarding Kenny's positive bonding with the foster parents, his desire to be adopted by them, and his lack of attachment to mother. Kenny's foster mother testified that Kenny was reluctant to talk about mother and that he never asked to see her. This testimony is adequate to support those portions of finding No. 31 challenged by mother. *See In re R.W.*, 108 N.M. 332, 772 P.2d 366 (Ct.App.1989).

Mother argues that the lack of bonding could not be considered by the district court because the department was responsible for the lack of bonding by preventing mother from visiting Kenny. She cites *In re Adoption of Doe*, 89 N.M. 606, 618, 555 P.2d 906, 918 (Ct.App.1976) for the proposition that " 'evidence of the relationship's destruction is of no consequence if it cannot be established that there was parental conduct which caused it.' " (Quoting *Adoption of V.M.C.*, 528 P.2d 788, 795

(Alaska 1974).) *Doe*, however, was concerned solely with abandonment. Its holding was only that destruction of the parent-child relationship does not in itself establish abandonment; disregard of parental obligations is also required. *Doe* did not hold that termination of parental rights is inappropriate when the parent's neglect of the child leads to severance of custody, which in turn damages parent-child bonding. Even assuming that termination pursuant to Section 32–1–54(B)(4) would be barred if the state had damaged the parent-child bond by improperly depriving mother of custody and the right of visitation (an issue that we do not decide), mother does not identify any error in the district court's orders denying custody and visitation. The statutory provisions favoring parental custody and visitation, e.g., NMSA 1978, Sections 32–1–2(A), –2(C), –34(D) (Repl.Pamp. 1989), are all conditional, not absolute, contrary to what mother appears to contend. Although mother argues that the Department's refusal to allow her to visit Kenny violated the mandate in *Termination Hearing I*, nothing in that mandate required the Department to provide visitation.

Mother also claims that her failure to request visitation cannot support a finding of lack of bonding. After *Termination Hearing I* the district court initially determined that visitation would not be in Kenny's best interests, *see* § 32–1–34(D), but later ruled in two orders that mother could request visitation should she so desire. At the present termination hearing the district court found that mother had never requested visitation. Mother claims, however, that she relied on the district court's March 1987 order denying visitation and had no reason to believe that she could request visitation. This contention is without merit. Mother's counsel signed his approval to both orders providing that mother could request visitation. Moreover, for the pur-

pose of proving the lack of a parent-child bond, her attitude toward Kenny was sufficiently established by her failure during two years to communicate with the Department concerning Kenny's status.

Thus, the district court's ruling complies with Section 32–1–54(B)(4).

### C. *Irrelevant Doctrine and Statute*

Finally, mother appears to challenge termination of her parental rights under Section 32–1–54(B)(3) and (4) because of the failure to meet various requirements not found in those provisions. For example, mother complains that she was not proved "unfit," as required by *Shorty v. Scott*, 87 N.M. 490, 535 P.2d 1341 (1975). *Shorty*, however, involved the application of the "parental right" doctrine in a family custody dispute. The statutory scheme for termination of parental rights does not require proof that a parent is "unfit" (although the term might be an apt appellation for a parent whose rights with respect to a child are terminated pursuant to Section 32–1–54(B)(3)). Similarly, NMSA 1978, Section 40–7–34 (Repl.Pamp.1989), a provision of the Adoption Act, is irrelevant to the termination of mother's parental rights.

### CONCLUSION

We affirm the district court's judgment terminating mother's parental rights to Kenny.

IT IS SO ORDERED.

BIVINS, C.J., and ALARID, J., concur.