1999-NMCA-036

975 P.2d 373

**In the Matter of MICHAEL R.C. and Henry A.R.C., Children,**

**State of New Mexico, ex rel., Children, Youth and Families Department, Petitioners–Appellees,**

v.

**Erika M. and Henry R.C., Respondents– Appellants.**

No. 19400.

Court of Appeals of New Mexico.

Jan. 22, 1999.

Angela L. Adams, Chief Children's Court Attorney, Roy E. Stephenson, Children's Court Attorney, Santa Fe, for Appellees.

Jane Bloom Yohalem, Santa Fe, for Appellants.

W. Karen Cantrell, Placitas, for Guardian ad Litem.

## OPINION

PICKARD, Judge.

{1} The trial court terminated the parental rights of Erika M. (Mother) to her two sons, Michael and Henry, by granting summary judgment in favor of the Children, Youth, and Families Department (the Department). Mother contends that summary judgment was inappropriate because she had raised material issues of disputed fact. We agree and reverse.

## BACKGROUND

{2} The underlying facts of this case are not in dispute. Michael and Henry were taken into the Department's custody in March 1994. The Department then filed an abuse and neglect petition alleging that the children were not being adequately cared for. The petition cited injuries to Michael, the parents' lack of food and medical supplies, and possible domestic violence and sexual abuse being perpetrated by Father. Father pled no contest to child abuse and negligent endangerment. Mother pled no contest to the allegation of insufficient supervision pursuant to NMSA 1978, § 32A–4–2(C)(3) (1997) (failure to protect children when parent knew or should have known that they had been physically or sexually abused).

{3} The children were taken into a foster home, and the court implemented a treatment plan aimed at reunification of Mother and the children. Over the course of the next thirty or so months, the trial court held periodic judicial review hearings and entered judicial review orders based primarily on reports by counsel and the Department's evaluation of Mother's progress. The trial court often adopted the Department's reports as findings. The first judicial review order, entered in early 1995, reflected the fact that Mother was making some effort to comply with the treatment plan and maintain contact with the children. Although this compliance was limited by Mother's difficult pregnancy with twins, the Department reported positive interaction between Mother and the boys at issue here.

{4} Two judicial reviews later in that year also reported Mother's positive interactions with the children and her diligent efforts to maintain contact with the boys. At that point, the boys were moved to a treatment foster home that could better address their behavioral disorders.

{5} Two more judicial review hearings were held in 1996. At the first, the Department's case synopsis reflected Mother's continued compliance with the treatment plan and a recommendation that steps toward reunification continue to be made. The Department recommended hands-on parenting training with the treatment foster parents. At the second judicial review hearing that year, though, the feedback was mixed. On the one hand, some feedback noted that Mother was participating in Michael's Peanut

Butter & Jelly Therapeutic Preschool and that the staff there was reporting favorably about her interactions with the boys. In contrast, a therapist's report described Mother's interaction with the children at that time as poor. In addition, the foster parents asserted that in their opinion Mother was unable to provide adequately for the children, and they expressed opposition to the reunification plan. The judicial review order resulting from this hearing again noted that Mother had made reasonable efforts to comply with treatment, and it continued the reunification plan.

{6} In 1997, the Department changed its position and proposed termination of Mother's parental rights. At that judicial review hearing, the foster parents again addressed the court, offering negative opinions about Mother's parenting abilities. The Department also relied on negative reports by two therapists. Reports from the Milagro program and the Peanut Butter & Jelly School were more positive about Mother's abilities. The court adopted the Department's report as a part of its findings, and it agreed with the recommendation of termination, finding that Mother had made insufficient efforts to cooperate with the prescribed treatment plan.

{7} At the final judicial review prior to the filing of a petition to terminate Mother's parental rights, the Department noted that Mother's visits had become inconsistent and requested a finding that future efforts to assist Mother would be futile. Mother's counsel disagreed, arguing that the treatment meetings were held in Los Lunas, which made them difficult for Mother to attend. Mother also argued that the foster parents had become uncooperative and strongly encouraged the children to view them as their true parents.

{8} The Department filed a motion to terminate Mother's parental rights. The motion sought termination based on neglect and constructive abandonment pursuant to NMSA 1978, §§ 32A–4–28(B)(2) and –28(B)(3) (1997). The Department filed a motion for summary judgment, relying in part upon the opinions of a psychologist and a therapist who concluded that permanent

placement with the foster parents was in the children's best interest and a social worker who suggested that Mother was unable to master necessary parenting skills. The Department also relied on the various judicial review orders that the trial court had adopted as findings. The guardian ad litem agreed with the Department's position.

{9} Mother argued, in response to the summary judgment motion, that facts were in dispute. She contended that the necessary element of disintegration of her relationship with the children was in dispute, in part due to the foster parents' interference and in part due to the differing opinions regarding whether she was bonded with the children. She also argued that her ability to care for the boys properly was in dispute.

{10} The trial court entered an order finding no genuine issue or dispute as to material facts and granting summary judgment, thereby terminating Mother's parental rights. Mother now appeals.

## DISCUSSION

### Standard of Review

{11} In reviewing an appeal from a grant of summary judgment, this Court examines the record to determine whether there are issues of material fact or evidence that puts a material fact in dispute. *See Silva v. Town of Springer*, 1996–NMCA–022, ¶ 5, 121 N.M. 428, 912 P.2d 304. We view the evidence in the light most favorable to requiring a trial or hearing on the merits of the case and most favorable to the party opposing summary judgment. *See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 163, 848 P.2d 1086, 1090 (Ct.App. 1993). If no disputed material fact exists, the moving party is entitled to judgment as a matter of law. *See* Rule 1–056(C) NMRA 1998.

{12} This Court has, in the abstract, deemed summary judgment appropriate in termination of parental rights proceedings where no genuine issues of fact are in dispute. *See State ex rel. Children, Youth & Families Dep't In re T.C.*, 118 N.M. 352, 353–54, 881 P.2d 712, 713–14 (Ct.App.1994). In addition, our Supreme Court has upheld a summary judgment terminating the parental

rights in the unique situation of a father who had murdered the child's mother and was sentenced to a lengthy period of incarceration. *See State ex rel. Children, Youth & Families Dep't v. Joe R.*, 1997–NMSC–038, ¶ 10, 123 N.M. 711, 945 P.2d 76.

{13} However, even when the facts are undisputed, if conflicting inferences can be drawn, summary judgment is improper. *See Trujillo v. Treat*, 107 N.M. 58, 59–60, 752 P.2d 250, 251–52 (Ct.App.1988). It is important to recall that we are not dealing with a substantial evidence standard in this case. Because we are dealing with summary judgment, it is worth heeding the Supreme Court's admonition that a surmise that " 'the adverse party is unlikely to prevail at the trial is not sufficient to authorize summary judgment against him.' " *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 178 n. 30, 629 P.2d 231, 254 n. 30 (1980) (quoting *American Mfrs. Mut. Ins. Co. v. American Broadcasting–Paramount Theatres, Inc.*, 388 F.2d 272, 279 n. 9 (2d Cir. 1967)).

**Material Issue of Disputed Fact**

{14} Mother contends that she raised material issues of disputed fact that should have defeated the Department's motion for summary judgment. Specifically, Mother claims that the children's foster parents interfered with her relationship with them such that whether she was responsible for a disintegration of the parental relationship was in dispute. The Department argues that even if this fact was in dispute, it was not material to the termination of parental rights, and therefore summary judgment was proper. The Department also claims that Mother did not allege a factual dispute regarding the neglect basis for termination.

{15} The Department's termination petition was based on both neglect and constructive abandonment. *See* §§ 32A–4–28(B)(2), (3). Those sections provide for termination when:

(2) the child has been a neglected or abused child as defined in the Abuse and Neglect Act ... and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child. The court may find in some cases that efforts by the department or another agency are unnecessary, when there is a clear showing that the efforts would be futile or when a parent has caused great bodily harm to the child or great bodily harm or death to the child's sibling; or

(3) the child has been placed in the care of others, including care by other relatives, either by a court order or otherwise and the following conditions exist:

(a) the child has lived in the home of others for an extended period of time;

(b) the parent-child relationship has disintegrated;

(c) a psychological parent-child relationship has developed between the substitute family and the child;

(d) if the court deems the child of sufficient capacity to express a preference, the child no longer prefers to live with the natural parent;

(e) the substitute family desires to adopt the child; and

(f) a presumption of abandonment created by the conditions described in Subparagraphs (a) through (e) of this paragraph has not been rebutted.

In her opposition to summary judgment, Mother claimed that issues of fact, including whether the Department had made reasonable efforts at each stage of the proceedings and whether Mother was able to care for the children properly, precluded summary judgment. The trial court's order granting summary judgment did not specify the basis on which termination was granted. On appeal, Mother contests summary judgment on both grounds.

**A. Termination Based on Constructive Abandonment**

{16} Mother claims that whether her relationship with her children had disintegrated, as prescribed by the statute, presented a genuine issue of material fact that

should have prevented the Department's success on its summary judgment motion. She claims that to the extent that the relationship had disintegrated, it was not her fault. The disintegration of the parent-child relationship as required by subsection (b) must be the fault of the parent. *See In re Adoption of J.J.B.*, 119 N.M. 638, 648–49, 894 P.2d 994, 1004–05 (1995); *In re C.P.*, 103 N.M. 617, 621, 711 P.2d 894, 898 (Ct.App.1985) (stating that there must be evidence that the parent-child relationship was destroyed by the parental conduct).

{17} Both Mother's and Father's affidavits alleged that the Department and the foster parents interfered with Mother's relationship with the children. Mother stated that the Department stopped her visits with the children. She also stated that she failed to appear for some of the visits as a result of the foster parents' refusal to bring the children to her. She asserts that she missed other meetings because she was given the wrong address of Michael's therapist and because treatment meetings were scheduled in Los Lunas despite Mother's inability to get there.

{18} Father's affidavit further detailed behavior of the foster parents that allegedly contributed heavily to any breakdown in the relationship between the children and Mother. For example, Father stated that the foster parents have been calling Henry "Mark," a name they planned to give him upon adoption. They had also encouraged Henry to call them "Mom" and "Dad." Mother's and Father's affidavits appear to raise factual issues for dispute. It is the Department's position, however, that these factual disputes were not material to the termination decision and therefore did not preclude summary judgment.

{19} The Department contends that the element of disintegration of the parent-child relationship can be found despite the contribution by the foster parents to the breakdown. While this is true in a termination proceeding heard by the judge who then makes findings, rules regarding what "can be found" do not apply where the issue is decided by summary judgment. The role of the foster parents and the Department in the disintegration of the relationships creates an issue upon which a finding must be made. The role of the parties in this case therefore creates a factual dispute, depending on the outcome of which it may or may not be determined that Mother was sufficiently responsible for the relationship's demise. Therefore, Mother raised a dispute of material fact sufficient to defeat termination of her parental rights by summary judgment on the basis of constructive abandonment.

## B. Termination Based Upon Neglect

{20} The Department contends that summary judgment based on Mother's inability to rectify the past neglect is supported by the record. The Department claims that Mother did not specifically allege facts in opposition to summary judgment regarding this basis for termination. However, Mother's opposition does claim a factual dispute with regard to Mother's parenting abilities and whether the Department made reasonable efforts to assist her. Mother continues to argue on appeal that her prospects for being a successful parent were in dispute, as was whether the Department's actions constituted reasonable efforts. The record supports Mother's contentions.

### 1. Differing Opinions of Mother's Parenting Ability

{21} Several treatment professionals were involved in this case. A psychologist, a therapist, and a social worker ultimately expressed opinions by affidavit that Mother was not capable of appropriately parenting the two boys. However, this evidence is weakened because the social worker was not the original social worker, and she had been assigned the case on December 15, 1997, after the termination proceeding had begun. Also, the doctor's and the therapist's affidavits did not speak to the issue of Mother's prospects as a suitable parent or to the Department's efforts, but focused instead almost solely on the children's emotional states in determining their best interests.

{22} It also appears from the Department's earlier reports that the staff of the Peanut Butter & Jelly Therapeutic Preschool indicated, as did at least one of the Milagro

program treatment professionals, that Mother shared a reasonably healthy relationship with the boys. These professionals were able to see Mother's interaction with the children on a more regular basis than were the psychologists. The Department's judicial review reports and the review orders that the court issued through August 1996 reflected both opinions, and those individuals who reported favorably to Mother's cause were not present for subsequent assessments. This lack of continuity casts further doubt on the court's finding that no disputed material facts existed.

### 2. Reasonable Efforts

{23} Mother's affidavit also calls into question whether the Department made reasonable efforts to assist her in complying with the treatment plan. Section 32A–4–28(B)(2) provides that termination based on neglect requires the court to find that "the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child." Contrary to the Department's view, it is not clear that this dispute had been resolved prior to summary judgment.

{24} The trial court stated that the question of reasonable efforts had been evaluated at each step of the proceedings, and as a result did not need to be addressed at summary judgment stage: "The court has ruled on the conduct of the Department and those orders from review proceedings, I think, eliminate the need for the court to go back and rule upon the conduct of the Department." Those previous decisions, however, were made based upon judicial review evidence which, as we discuss below, Mother had no full and fair opportunity to contest. Nor did she have incentive to do so, especially when the court was finding her in compliance with the treatment plan. Therefore, Mother's affidavit, by raising the concern that the Department set her up for failure by keeping her from the children and by holding treatment meetings where she could not attend them, put the Department's reasonable efforts in dispute. This issue should not have been decided at summary judgment.

{25} We understand the trial court's desire to resolve this kind of case expeditiously, where it may appear that termination is in the best interests of the children. However, even if the judge believes the party resisting summary judgment may not ultimately prevail at a trial on the merits, summary judgment should not be entered when there are one or more disputed material facts. *See Montoya v. Kirk–Mayer, Inc.,* 120 N.M. 550, 554, 903 P.2d 861, 865 (Ct.App.1995). The disputed professional assessment of Mother's ability to parent, the contributions of the Department and the foster parents to the breakdown of the parent-child relationship, and the reasonableness of the Department's efforts to assist Mother were material issues that should not have been decided at the summary judgment stage under the facts of this case.

### Due Process Considerations

{26} Mother also raises due process concerns, claiming that the trial court's reliance on judicial review hearings for its findings violated her due process rights. It is beyond dispute that the termination of parental rights implicates a significant deprivation of a liberty protected by due process. *See In re Adoption of J.J.B .,* 119 N.M. at 644–47, 894 P.2d at 1000–03; *In re Kenny F.,* 109 N.M. 472, 475–76, 786 P.2d 699, 702–03 (Ct.App.1990), *overruled on other grounds by In re Adoption of J.J .B.,* 117 N.M. 31, 39, 868 P.2d 1256, 1264 (Ct.App.1993), *judgment aff'd. by* 119 N.M. 638, 894 P.2d 994 (1995). Procedural due process in a termination of parental rights case where factual disputes exist guarantees a parent a fair opportunity to be heard and present a defense. *See In re Kenny F.,* 109 N.M. at 475, 786 P.2d at 702.

{27} The purpose of judicial review hearings is discussed in NMSA 1978, § 32A–4–25 (1997). These are periodic hearings at which dispositional judgments are reviewed. *See id.* § 32A–4–25(B). According to that section, judicial reviews are held to assess the Department's implementation of a treatment plan and a parent's progress and compliance

with it. *See id.* § 32A–4–25(A). Such hearings do not conform to the constraints of a usual adversarial hearing. Cross-examination is not conducted and the rules of evidence do not apply. *See* § 32A–4–25(E). No such exceptions are found in the guiding authority for the conduct of termination hearings. *See* NMSA 1978, § 32A–4–29 (1997). Termination hearings are more formal and comply with the rules of court because of the weighty issue—final termination of parental rights—that is being considered at them.

{28} We question whether a district court, in deciding to terminate parental rights, can rely solely on facts gleaned from the judicial review hearings at which Mother did not have a full and fair opportunity to be heard. Indeed, Mother had no incentive to contest the Department's reports when they were used for their original purpose as progress reports, rather than in support of termination. However, the need to answer that question in this case is obviated by our holding above that Mother raised material factual disputes that should have defeated summary judgment. As a result of our holding, Mother will have an opportunity to be heard and present a defense.

CONCLUSION

{29} We acknowledge the possibility that, as the guardian ad litem contends, there is substantial evidence in support of the termination of Mother's parental rights. However, substantial evidence is not the appropriate standard of review in this case. We hold that summary judgment was not the appropriate means for resolving this case. Mother raised material factual disputes which should have defeated the Department's summary judgment motion. We wish to emphasize, however, that nothing in this opinion would prevent the trial court from implementing, following notice and opportunity to be heard, creative evidentiary and trial procedures designed to expedite the final resolution of these types of cases. We hold only that summary judgment, when there are disputed issues of fact, is not such a procedure. Therefore, we reverse and remand for a termination hearing at which both sides may marshall and present their evidence, follow-

ing which the court may find the facts as it sees them.

{30} **IT IS SO ORDERED.**

APODACA and BUSTAMANTE, JJ., concur.