This is a termination of parental rights case.
After a hearing, Montgomery Circuit Court, Juvenile Division, terminated the parental rights of Richard Pignolet and Donna Pierce in their children, Amanda Pierce and Gustave Pierce. The court placed permanent custody of the two children in the Alabama Department of Pensions and Security (DPS) so that they may be placed for adoption. The mother and father separately appeal this decision.
DPS became involved in this case in December 1983 when responding to a call regarding possible neglect. The family identified themselves as "Richard and Bernice Smith" and their children "David, Dennis, and Sue Smith." They were living at the KOA campground in Hope Hull in a bus which had been converted into a trailer. *Page 590 
The DPS worker explained to "Mrs. Smith," who was pregnant with her fourth child, programs which were available for her and her family, and how to apply for them. The worker offered to assist "Mrs. Smith" in obtaining identification, and to help her improve the family's living conditions, which were described as "filthy."
In January 1984 DPS received another neglect complaint on the "Smith" family. They discovered that there had been no improvement in the living conditions, and "Mrs. Smith" had not followed through on applying to any of the public assistance programs.
DPS observed that even though it was cold outside and the trailer was not adequately heated "Sue" was dressed in nothing but a diaper. "David" and "Dennis" were dressed in filthy pajamas. "David," who was school-age, had never been enrolled in school. A pick-up order was granted, and the children were taken into protective custody.
A medical examination of the children revealed that "Sue" had an ear infection, a bacterial infection on her buttocks caused by repeated urination in the same diaper, and a temperature of 102.6 degrees. The boys were found to have a redness in their genital area, as well as on the legs and buttocks, due to wearing clothes soaked with urine.
At the review hearing held within seventy-two hours, "Mr. and Mrs. Smith" identified themselves and their children as the "Smith" family under oath in open court. They presented fabricated certificates of baptism to verify the children's alias names.
In February 1984 "Mrs. Smith," who was really Donna Pierce, informed DPS of the true identity of herself and her family after "Mr. Smith," who was really Richard Pignolet, abandoned her. The children were identified as Johnathan, Adam, and Amanda Pierce, and there were birth certificates to verify this.
Johnathan's and Adam's father is Willard Pierce, Donna Pierce's first husband. These two children are in the custody of their paternal grandparents in Rhode Island.
Amanda was fathered by Richard Pignolet, Donna Pierce's common law husband. Mrs. Pierce's fourth child, Gustave Pierce, also fathered by Richard Pignolet, was born in May 1984, and was immediately taken into protective custody.
There was evidence that when the mother brought her two oldest children, Johnathan and Adam, to Alabama from Rhode Island it was in violation of a court order. At the time that the father left Rhode Island for Alabama, he was out of jail on bail pending an appeal of his conviction for sexually abusing his stepdaughters from a previous relationship.
In March 1985 a petition asking the court to terminate parental rights and award permanent custody of Amanda and Gustave to DPS was filed. The mother, who had returned to Rhode Island in October 1984, was notified of the petition and, at her request, an attorney was appointed to represent her. Notice was also given to the father, who had been returned to Rhode Island to serve his sentence at an adult correctional facility. The father also requested that an attorney be appointed to represent him, and the request was granted.
In April 1985 the father, through his attorney, filed a motion to compel attendance, which was denied. At the termination hearing the father's attorney indicated that he wished to present testimony and physical evidence from the father but was precluded from doing so because his client was denied attendance at the hearing. On appeal, the father contends that he was denied his fundamental rights of due process when the trial court denied his motion to compel attendance.
In our research we could find no cases where the Alabama courts have specifically addressed the issue of whether a prisoner has the right to personally appear at a termination of parental rights hearing. It has been stated that due process of law *Page 591 
requires that there be notice, a hearing conducted in accord with that notice, and a judgment consistent with that notice and hearing. Opinion of the Justices, 345 So.2d 1354 (Ala. 1977). Where there is representation by counsel and an opportunity to present testimony through deposition, then due process does not require that an incarcerated parent be allowed to attend the termination hearing. Eastman v. Eastman,429 So.2d 1058 (Ala.Civ.App. 1983); 16D C.J.S. Constitutional Law § 1254 (1985).
In this case notice of the proceeding was given to the father and he was appointed an attorney to represent his interests. Under Rule 32 (a)(3)(C) of the Alabama Rules of Civil Procedure, the deposition of a person who is absent from the hearing due to imprisonment can be used as though that person was present and testifying. The father's attorney could have presented testimony from the father in the form of a deposition. After considering all of these factors, we find that the father's fundamental rights of due process were not denied.
It is well settled that natural parents have the prima facie right to custody of their children. But this right can be overcome when clear and convincing evidence indicates that it is in the children's best interests to be removed from their parents' custody. In the Matter of Clingan, 471 So.2d 435
(Ala.Civ.App. 1985).
We note that when a trial court decides to terminate parental rights that decision is presumed correct and will not be overturned on appeal unless it appears that there was no evidence to support that decision. Fike v. Department ofPensions Security, 459 So.2d 921 (Ala.Civ.App. 1984).
Both parents contend that there was no clear and convincing evidence presented at the hearing to overcome their prima facie right to custody. They also contend that no less drastic alternatives to termination of parental rights were considered.
There was ample evidence to support the court's decision to terminate parental rights. The father had abandoned the mother and children prior to the time that Gustave was born. At the time the petition to terminate was filed, he was serving time in Rhode Island for a sexual abuse conviction. At the hearing there was evidence to indicate that he had escaped from prison, and even his attorney did not know his client's present whereabouts.
Before the mother's return to Rhode Island, she had been told of the importance of maintaining contact with DPS and working toward the improvement of her living conditions, but she had not maintained contact with DPS in Montgomery concerning Amanda and Gustave, nor had she attempted to obtain the court order necessary to visit the two older boys in Rhode Island. Since her return to Rhode Island, she had held three different jobs and was currently unemployed. She had lived in several different locations, and her present living situation was tenuous.
The evidence indicates that DPS had considered several less drastic measures, but there was absolutely no cooperation on the part of the parents.
DPS had tried to locate blood relatives of the children in Rhode Island. They were unable to gain any cooperation in locating these relatives. There was also some discussion about placing the children in foster care in Rhode Island. The mother was told that if she found a job, maintained employment, and found suitable living arrangements then DPS would request that the children be transferred to foster care in Rhode Island.
It was determined that it was in the best interests of the children to terminate parental rights and place them for adoption because neither parent has made any progress in improving their living situations. The children are young (at the present, Amanda is almost three and Gustave is almost two) and in good health. Both are in need of a permanent home, and adoption appears to be the best alternative. We find no error in the trial court's determination to terminate parental rights in the parties' two children. *Page 592 
The mother also raises the issue that DPS did not follow proper procedure under the Alabama Administrative Procedure Act (AAPA) when terminating parental rights in this case. DPS does not deny that it is subject to the AAPA in appropriate circumstances. However the present case does not fall under those circumstances. It is a situation where DPS is filing the petition pursuant to the 1984 Child Protection Act (§§ 26-18-1
to -10, Code 1975), and the appropriate court, not DPS, makes the determination which affects the rights and duties of these parents.
The manual referred to at the termination hearing was an intra-agency manual which outlined for DPS workers "things to look at" when evaluating a person's home and life style, but it did not outline specific standards. After the DPS evaluation the mother was told what was not satisfactory and what was needed in the way of change. The manual itself did not determine whether the parental rights were terminated — that decision was made by the court after considering all the evidence.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.