■ In the Matter of JAMES CARTON K., III, a Child Alleged to be Neglected. JAMES CARTON K., JR., Appellant; FORESTDALE, INC., Respondent. [665 NYS2d 426] —In a proceeding pursuant to Social Services Law § 384-b to terminate the parental rights of James Carton K., Jr., the father appeals from a dispositional order of the Family Court, Queens County (Gage, J.), dated September 5, 1996, which, after a hearing, terminated his parental rights.

Ordered that the order is affirmed, without costs or disbursements.

The appellant father was found to have permanently neglected his son James, the subject child. The Family Court thereafter terminated the appellant's parental rights so as to free the child for adoption by his foster mother. The appellant does not challenge the factual finding of permanent neglect and does not argue that it is contrary to James's best interests to terminate the appellant's parental rights so as to free the child for adoption. Rather, the appellant's sole assertion is that his due process rights were violated when portions of the fact-finding hearing were conducted in his absence. We disagree.

The record reveals that the child was born on July 12, 1988. He was placed in the care of the Commissioner of Social Services in December 1989, following a finding of neglect as against his mother. His mother's parental rights were subsequently terminated (*see, Matter of James Carton K.,* 235 AD2d 422). The child has been under the care of the petitioner agency since 1990.

The appellant father has been convicted of both State and Federal crimes. A grand larceny conviction in or about 1991 led to a period of incarceration until October 1992. Upon his release, the appellant exercised only sporadic visitation with James. In August 1994, the appellant was convicted on Federal narcotics charges and was reportedly sentenced to a term of two years imprisonment.

The petition to terminate the appellant's parental rights was filed on or about August 10, 1994. As proceedings commenced, the appellant's counsel apprised the court that the appellant was incarcerated in Vermont and that Federal prison officials would not permit his attendance at the termination proceedings without a Federal court order. Cognizant of the appellant's rights to participate in the proceedings, and with the consent of the appellant's counsel, the court directed that the fact-finding hearing commence in the appellant's absence. However, the court further specified that after direct examination of the caseworker, cross-examination by the appellant's counsel would not occur until after the hearing minutes were transcribed and sent to the appellant for his review and after affording him an opportunity to discuss matters with counsel.

On May 31, 1995, the caseworker offered direct testimony and was cross-examined by the Law Guardian. Transcripts of the hearing were ordered and cross-examination by the appellant's counsel was adjourned to July 26, 1995. On that date, however, the appellant's counsel reported that the appellant had been transferred to a different correctional facility and that the transcripts had not been delivered to him. The court was inclined to grant a further adjournment but at the request of both the Law Guardian and the petitioner, and without opposition from the appellant's counsel, the court permitted cross-examination of the caseworker to begin on preliminary matters after which a full transcript would be forwarded to the appellant for his review and comment. Limited cross-examination thus proceeded and the matter was adjourned to September 13, 1995, for continued cross-examination of the caseworker.

Apparently the appellant's whereabouts could not be ascertained. On September 13, 1995, however, the court was apprised that the appellant had been transferred to a correctional facility in Fort Dix, New Jersey. The court granted a further adjournment to enable counsel to send the transcripts to the appellant and to enable counsel to discuss the case with the appellant. On October 27, 1995, the appellant's counsel informed the court that he had corresponded with the appellant and that Federal authorities still would not agree to release the appellant to attend the proceedings. However, the appellant would be permitted to participate in the hearing via a telephone hookup. Counsel requested a further adjournment to meet with the appellant to prepare his testimony. The matter was thus adjourned to December 4, 1995.

The appellant participated in the proceedings on December 4, 1995, via a speaker telephone. During this proceeding, the

appellant's testimony was taken out of turn and cross-examination of the caseworker continued. The appellant's outbursts interrupted the caseworker's testimony on several occasions, and thereafter, the telephone hookup was apparently disconnected. The appellant's counsel re-established contact with the prison but was told that the appellant had left the room, demanding that he be appointed a new attorney. Counsel requested a further adjournment, but this time the court opined that the proceedings had become too protracted and that the appellant had voluntarily ended his participation because he was annoyed by the caseworker's testimony. The court thus directed that the cross-examination of the caseworker be concluded in the appellant's absence. Approximately 20 pages of testimony were taken after the termination of the telephone connection.

Proceedings were due to resume on February 1, 1996, but an adjournment was granted to accommodate the next witness, the paternal grandmother. A telephone hookup to the prison was available that day. On the adjourned date of April 29, 1996, however, a hookup was not available at the prison and the paternal grandmother testified in the father's absence. The court directed that a transcript of the grandmother's testimony be sent to the appellant who, the court was advised, would be paroled within three weeks.

At the conclusion of the proceedings on April 29, 1996, counsel for the father rested and arguments were heard on the issue of permanent neglect. The court ordered evaluations of the child and adjourned the proceeding to June 14, 1996. On June 6, 1996, the court issued a written decision finding that the child was permanently neglected by the appellant, a factual finding not challenged on this appeal.

On June 14, 1996, the appellant was represented by a new attorney who advised the court that the appellant had been paroled but could not be present due to the unavailability of his parole officer to approve an out-of-State trip. The court thus adjourned the proceeding to August 7, 1996. The dispositional hearing was held on August 7, 1996, in the appellant's presence and with his participation. On August 16, 1996, the court rendered a decision finding that it would be in the child's best interests for the appellant's parental rights to be terminated so as to enable the child to be adopted by his foster mother. A dispositional order was issued on September 5, 1996, from which this appeal has been taken.

The foregoing summary of procedural facts demonstrates beyond peradventure that the court undertook substantial

measures to protect the appellant's rights to be present at, and to participate in, the proceedings. Certainly, parental rights may not be arbitrarily terminated in a parent's absence (*see, Matter of Dominique L. B.,* 231 AD2d 948; *Matter of Abdul C.,* 200 AD2d 356; *Matter of Kendra M.,* 175 AD2d 657). However, a parent's right to be present for fact-finding and dispositional hearings in termination cases is not absolute (*Matter of Raymond Dean L.,* 109 AD2d 87). The child whose guardianship and custody is at stake also has a fundamental right to a prompt and permanent adjudication (*Matter of Raymond Dean L., supra,* at 90). Thus, when faced with the unavoidable absence of a parent, a court must balance the respective rights and interests of both the parent and the child in determining whether to proceed (*see, Matter of Dutchess County Dept. of Social Servs. [Cody M.],* 196 AD2d 196; *Matter of Raymond Dean L., supra,* at 87; *Matter of A. O.,* 157 Misc 2d 177). Among the factors to be considered is whether the parent's physical absence may nevertheless be ameliorated by utilizing alternative measures to ensure their participation such as depositions, interrogatories, or telephone conferences (*Matter of Raymond Dean L., supra,* at 87).

In the instant matter, it is clear that the Family Court providently exercised its discretion in its handling of this proceeding. It granted the appellant father nearly every adjournment requested over a period of approximately two years, so as to ensure his participation. This case is thus clearly distinguishable from *Matter of Abdul C.* (200 AD2d 356, *supra),* and *Matter of Kendra M.* (175 AD2d 657, *supra*) where the courts made only superficial efforts to secure the presence of locally incarcerated parents before improperly terminating their parental rights in their absence.

Moreover, in addition to the numerous adjournments granted herein to ensure the participation of a Federal prison inmate, when the appellant's physical presence was determined to be unobtainable, the court permitted proceedings to go forward, but subject to the appellant's participation via receipt and review of transcripts. Thereafter, steps were taken to involve the appellant via telephone conference calls. The appellant did testify and participate in the cross-examination of the caseworker via telephone until he terminated the call. Only thereafter did the hearing continue in the appellant's absence but clearly, this was not error in light of the appellant's voluntary abandonment of the telephone hookup (*see, Matter of Kathryn P.,* 225 AD2d 1064; *Matter of Victoria B.,* 185 AD2d 811).

It is thus apparent that much of the fact-finding hearing was

conducted with the appellant's participation. To the extent that proceedings were conducted in his involuntary physical and functional absence, we conclude that the child's right to a prompt adjudication outweighed the appellant's right to be present for those limited portions of the fact-finding hearing (*see, Matter of Jennifer DD.*, 227 AD2d 675; *Matter of Raymond Dean L.*, 109 AD2d 87, *supra*). This is especially so given that the repeated adjournments granted to the appellant caused the proceedings to become protracted over a period in excess of two years during which the child's fate remained in limbo. Accordingly, we find that on balance, the appellant's due process rights were not violated and thus the dispositional order need not be overturned.

Finally, notwithstanding the appellant's failure to challenge the dispositional order on the merits, we find that the evidence clearly and convincingly established his permanent neglect of the child and that the termination of the appellant's parental rights so as to free the child for adoption was clearly in the child's best interest (*see, Matter of Miracle Makers [Jamal Lavel Z.] v Sonia J.*, 220 AD2d 593; *Matter of Hasson B.*, 219 AD2d 649; *Matter of Kareema Monique B.*, 211 AD2d 577). The child is a special needs child who has been in the care of his foster mother since May 1994. By all accounts, the foster mother has provided a loving and nurturing environment in which she and the child have become closely bonded. For the first time in his life, the child's needs are being provided for by a capable custodian whose "prayer" is to be able to adopt him. The appellant, on the other hand, has failed to demonstrate that he can provide the child with a similarly supportive and nurturing home. Accordingly, there can be no doubt that the Family Court's dispositional order should be affirmed. Miller, J. P., Pizzuto, Goldstein and Florio, JJ., concur.