1999-NMCA-035

974 P.2d 164

**STATE of New Mexico, ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**In the Matter of RUTH ANNE E., Sonya Sue E., and Blanca Alicia E., Children, and concerning Lorena R. and Robert E., Robert E., Respondent–Appellant.**

No. 19266.

Court of Appeals of New Mexico.

Jan. 28, 1999.

Angela L. Adams, Chief Children's Court Attorney, Roy E. Stephenson, Children's Court Attorney, Children, Youth & Families Dep't, Santa Fe, for Appellee.

Nancy L. Simmons, Albuquerque, for Appellant.

Judy Bailey, Cedar Crest, Guardian ad Litem for Children.

## OPINION

DONNELLY, Judge.

{1} Robert E. (Father) appeals from a judgment terminating his parental rights to his three minor children, Ruth Anne E., Sonya Sue E., and Blanca Alicia E., ages eight, six, and four, respectively. The dispositive issue presented on appeal is whether Father was deprived of an opportunity to appear or to meaningfully defend against the action to terminate his parental rights. Because we conclude that Father was denied due process of law, we reverse and remand for a new hearing on the motion to terminate Father's parental rights.

### FACTS AND PROCEDURAL POSTURE

{2} On January 9, 1995, the Children, Youth and Families Department (the Department) received a report that Lorena R. (Mother) had left her three minor children with a babysitter in Albuquerque, New Mexico, and had failed to return for them. The children were placed in the temporary custody of the Department.

{3} Although the police located Mother and notified her that the children had been placed in protective custody, she did not contact the Department and she subsequently disappeared. Approximately six months later, in July 1996, Mother reappeared and indicated a desire to regain custody of her children. She stated that she had been attending a drug and rehabilitation program in Texas. Mother, however, subsequently regressed, began using drugs again, and failed to keep in contact with the children or the Department.

{4} At the time the children were initially taken into protective custody, Father was incarcerated in a Texas prison serving a sentence on a felony conviction. Father was served with a copy of the petition, alleging that the children were neglected and abused. He filed an answer asserting that he was in prison in Texas, that he was indigent, and that he wished to contest "Petitioner's Original Petition For Termination." Father's answer sought the appointment of a court-appointed attorney to represent him, and requested "that he [be permitted] to be present at any proceeding affecting the cus-

tody of [his] children as a matter of due process and equal protection of the law." Father also requested that the children's court issue an order directing that he be transported to the court so that he could "present testimony concerning the future of his natural children and defend his rights." Alternatively, Father requested that the children's court grant a continuance until "such time as [he was] released from the penitentiary and . . . able to appear in Court and defend [such] suit." The children's court appointed separate counsel to represent Father and Mother, and appointed a guardian ad litem to represent the children.

{5} The children's court issued an order directing the Bernalillo County Sheriff's Department to transport Father from the correctional facility in Texas to an adjudicatory hearing scheduled for May 16, 1995; however, the order could not be enforced.

{6} On July 30, 1997, the Department filed a motion seeking to terminate both Mother's and Father's parental rights. Father filed a response contesting the motion. The children's court scheduled a hearing on the merits for November 26, 1997, in Albuquerque. At the hearing on the merits, Father's attorney informed the children's court that Father had been released from prison but had been reincarcerated on a new charge, and that he expected to be released from jail in the immediate future. His attorney requested that the children's court grant a continuance so that Father could appear and testify. The children's court denied the request and directed that the hearing proceed.

{7} The only witnesses who testified at the hearing on the motion to terminate parental rights were witnesses called by the Department. Neither Father nor Mother were present, although the witnesses called by the Department were cross-examined by counsel who had been appointed to represent Father and Mother. At the conclusion of the hearing, the children's court found that the children were abused and neglected, that the parental bond between the parents and the children had disintegrated, and that the parental rights of Father and Mother should be terminated.

*DISCUSSION*

{8} On appeal, Father asserts, among other things, that incarceration alone is insufficient to support an allegation of abandonment, that his procedural due process rights were violated because he "was never afforded an opportunity to participate in the merits of the trial involving termination of his parental rights," that he was precluded "from presenting evidence in his own defense" and that he was not given an opportunity to refute the matters presented by the Department.

{9} Before addressing the merits of Father's due process challenge, we first determine whether under the facts shown here, this Court has jurisdiction to entertain Father's appeal. The judgment terminating Father's parental rights was filed on January 13, 1998. Father's court-appointed attorney filed a notice of appeal on February 13, 1998, one day past the thirty-day deadline prescribed by Rule 12–201(A) NMRA 1999 for the filing of an appeal. No request was made by Father's attorney for an extension of time within which to file the appeal. Father urges this Court to entertain the issues raised by his appeal despite the delay in the filing of his notice of appeal. He points out that in *State v. Duran*, 105 N.M. 231, 232, 731 P.2d 374, 375 (Ct.App.1986), this Court held that a conclusive presumption of ineffective assistance of counsel exists where a notice of appeal or a waiver of the right to appeal is not filed within the time limit prescribed by Rule 12–201(A). *Cf. State v. Peppers*, 110 N.M. 393, 398–99, 796 P.2d 614, 619–20 (Ct.App.1990) (assuming untimely appeal was the consequence of ineffective assistance of counsel).

{10} We apply a similar result in the instant case and hold that Father's appeal should be deemed to have been timely filed. The mistake of counsel, under the circumstances existing here, should not deprive Father of appellate review on the merits. *See State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999–NMCA–009, ¶ 20, 126 N.M. 664, 974 P.2d 158 (right to effective assistance of counsel extends to cases involving termination of parental rights). *See generally In re M.D.(S).*, 168 Wis.2d 995, 485 N.W.2d 52, 54 (1992) ("It is

axiomatic that the right to be represented by appointed counsel is worthless unless that right includes the right to *effective* counsel."). Under NMSA 1978, § 32A–4–10(B) (1993), counsel is required to be appointed for a parent or guardian in cases alleging neglect and abuse of a minor. *See also* NMSA 1978, § 32A–4–29(F) (1997) (requiring appointment of counsel for an indigent parent). In termination of parental rights cases, as in criminal cases, a fundamental liberty interest is at stake. *See Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (recognizing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); *see also State ex rel. Children, Youth & Families Dep't v. Joe R.*, 1997–NMSC–038, ¶ 29, 123 N.M. 711, 945 P.2d 76 ("Father's rights and obligations as a parent are protected by his constitutional right to due process."); *In re Ronald A.*, 110 N.M. 454, 455, 797 P.2d 243, 244 (1990) (parents' right to custody is constitutionally protected).

{11} We turn next to Father's challenge to the validity of the order terminating his parental rights, which is grounded upon his claim of denial of due process. Father argues that he was never afforded the opportunity to participate in the proceeding involving the termination of his parental rights. More specifically, he asserts he was precluded from "presenting evidence" in defense of the allegations of neglect and abandonment.

{12} The Department urges this Court not to consider Father's due process claim, arguing that he failed to preserve such contention. The Department asserts that Father failed to sufficiently alert the children's court to his claim of denial of due process at the proceedings below. We disagree.

{13} Father's answer to the petition to terminate his parental rights alleged that he did not have "sufficient funds or assets to hire an attorney to represent [Father's] interests in this lawsuit," attached an affidavit of indigency, and requested that the children's court appoint an attorney to represent him. The answer also requested a continuance in the termination hearing because of Father's incarceration in Texas, and stated

that he "desire[d] to present testimony in his own behalf." Finally, the answer asserted that Father was entitled to be present at such proceeding "affecting the custody of [his] children as a matter of due process and equal protection of the law."

{14} On October 29, 1997, the initial hearing date scheduled by the children's court, Father's court-appointed attorney specifically informed the children's court that Father was incarcerated in Texas. Counsel requested that the hearing be commenced and then continued to a later time so that Father could participate in the proceedings. The children's court acquiesced to that request. At the continuation of the hearing one month later, Father's counsel again requested a delay in the proceedings to permit Father to take part in the proceedings. The children's court denied this request. By filing a pleading requesting the opportunity to present testimony on his own behalf and by requesting a continuance so that Father could take part in the proceedings, Father's attorney alerted the children's court to Father's desire to actively contest the charges against him.

■ {15} Not every act of a parent which results in the parent's incarceration constitutes a valid basis to terminate an individual's parental rights. *See In re Adoption of Doe*, 99 N.M. 278, 282, 657 P.2d 134, 138 (Ct.App.1982). The Department argues, however, that Father's unavailability at trial was not based upon any arbitrary action of New Mexico, but rather, as a direct result of his incarceration in Texas. It concedes that, although it is preferable that a parent, alleged to have neglected or abandoned a child, be physically present at a hearing on a petition to terminate parental rights, there is no constitutional requirement requiring a parent's presence.

■ {16} The Department is correct that due process requirements do not mandate the personal appearance of a parent in parental termination proceedings where the parent is serving a prison sentence outside the jurisdiction where the action to terminate parental rights is pending. Although the court must utilize procedures which protect the rights of parents in hearings involving the termination of parental rights, the primary consideration must be given to the best interests of the child. *See id.* at 281, 657 P.2d at 137. Courts in a number of states have addressed the question of what procedural due process requirements are necessary when a state seeks to terminate the parental rights of a parent who is either incarcerated or is otherwise involuntarily prevented from attending the hearing. None have concluded that an individual who has been incarcerated or otherwise unable to personally appear in court has an absolute right consistent with the Due Process Clause to appear at a termination of parental rights hearing.[1] *See generally* Philip M. Genty, *Procedural Due Process Rights of Incarcerated Parents in Termination of Parental Rights Proceedings: A Fifty State Analysis*, 30 J.Fam.L. 757, 775–76 (1991–92) (stating

1. *See Pignolet v. State Dep't of Pensions & Sec.*, 489 So.2d 588, 590–91 (Ala.Civ.App.1986); *E.J.S. v. State Dep't of Health & Soc. Servs.*, 754 P.2d 749, 752 (Alaska 1988); *In re Appeal in Pima County Juvenile Action*, 131 Ariz. 100, 638 P.2d 1346, 1347 n. 1 (Ariz.Ct.App.1981); *In re Gary U.*, 136 Cal.App.3d 494, 186 Cal.Rptr. 316, 318–19 (1982); *People ex rel. C.G.*, 885 P.2d 355, 357 (Colo.Ct.App.1994); *In re Juvenile Appeal*, 187 Conn. 431, 446 A.2d 808, 813 (1982); *In re Heller*, 669 A.2d 25, 32 (Del.1995); *In re F.L.S. IV*, 232 Ga.App. 100, 502 S.E.2d 256, 257 (1998); *In re Baby Doe*, 130 Idaho 47, 936 P.2d 690, 695 (Idaho Ct.App.1997); *In re J.S.*, 470 N.W.2d 48, 52 (Iowa Ct.App.1991); *In re J.L.D.*, 14 Kan. App.2d 487, 794 P.2d 319, 322 (1990); *In re S.A.D.*, 481 So.2d 191, 193–94 (La.Ct.App.1985); *In re Randy Scott B.*, 511 A.2d 450, 452–54 (Me.1986); *In re Vasquez*, 199 Mich.App. 44, 501 N.W.2d 231, 233–35 (1993); *In re Welfare of HGB*, 306 N.W.2d 821, 826 (Minn.1981); *H.W.S. v. C.T.*, 827 S.W.2d 237, 242 (Mo.Ct.App.1992); *In re L.V.*, 240 Neb. 404, 482 N.W.2d 250, 257–59 (1992); *In re Raymond Dean L.*, 109 A.D.2d 87, 490 N.Y.S.2d 75, 77–78 (1985); *In re F.H.*, 283 N.W.2d 202, 209–10 (N.D.1979); *In re Rich, IV*, 604 P.2d 1248, 1252–53 (Okla.1979); *State ex rel. Juvenile Dep't v. Stevens*, 100 Or.App. 481, 786 P.2d 1296, 1298–99 (1990) (en banc); *In re A.P.*, 692 A.2d 240, 243–44 (Pa.Super.Ct.1997); *Najar v. Oman*, 624 S.W.2d 385, 387 (Tex.Ct.App. 1981); *State ex rel. M.A.V. .v. Vargas*, 736 P.2d 1031, 1033–34 (Utah Ct.App.1987); *In re Darrow*, 32 Wash.App. 803, 649 P.2d 858, 859–61 (1982); *see also In re C.J.*, 272 Ill.App.3d 461, 208 Ill. Dec. 833, 650 N.E.2d 290, 294 (1995) (violation of due process necessitated reversal and remand for new termination hearing in order to provide mother meaningful opportunity to be head and defend against charges).

"there is unanimity among the jurisdictions that have decided the issue that [prisoners incarcerated outside the state] do not have the right to be brought into the state for the termination hearing, as long as the parent is represented by counsel and provided with alternative means of participating in the hearing").

{17} Thus, while it is clear that a parent incarcerated out of state does not have an absolute right to appear at a parental rights termination hearing, this does not end our inquiry. We next address the first-impression issue of whether a parent who is prevented from attending a termination proceeding because of his or her incarceration, is entitled by due process to have the court fashion an alternative procedure to permit the parent to respond to the matters presented by the state. Procedural due process mandates that a person be accorded an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Of the states which have held that personal appearance of an incarcerated parent is not mandated in parental termination of rights proceedings, courts which have addressed this issue are not in accord as to what particular optional procedural due process safeguards must be provided to ameliorate the parents' physical absence by ensuring their participation. Rather the courts acknowledge that procedural due process is a flexible right and the amount of process due depends on the particular circumstances of each case. *See In re Welfare of HGB*, 306 N.W.2d at 825; *In re Christopher D.*, 191 Wis.2d 680, 530 N.W.2d 34, 42 (Wis.Ct.App. 1995). A number of states have held that a parent incarcerated out of state or otherwise prevented from attending a termination hearing was afforded due process under the circumstances when the parent received notice, was represented by counsel, and was given an opportunity to appear and testify by deposition: *See, e.g., Pignolet*, 489 So.2d at 591; *In re Appeal in Pima County Juvenile Action*, 638 P.2d at 1347 n. 1; *People ex rel. C.G.*, 885 P.2d at 357; *In re J.S.*, 470 N.W.2d at 52; *In re J.L.D.*, 794 P.2d at 322; *In re*

*Welfare of HGB*, 306 N.W.2d at 825; *In re James Carton K., III*, 245 A.D.2d 374, 665 N.Y.S.2d 426, 429 (1997); *In re F.H.*, 283 N.W.2d at 209–10; *In re Rich, IV*, 604 P.2d at 1252–53; *Najar*, 624 S.W.2d at 387.

{18} Courts in other cases, however, have held that due process requirements necessitate more than simply providing for a parent's appearance by deposition. They required that the parent be given an opportunity to review the evidence presented by the state, to consult with his or her attorney, and then to present evidence by deposition or by telephone. *See In re Juvenile Appeal*, 446 A.2d at 811–12 (due process afforded when transcript of state's witnesses was prepared, sent to parent, parent had opportunity to review and discuss with attorney, hearing then reconvened and parent through his or her attorney is given an opportunity to cross-examine state witnesses and present testimony); *In re Baby Doe*, 936 P.2d at 693–95 (parent permitted to present testimony through telephone deposition and attorney allowed to call additional witnesses at later time if additional evidence is developed during deposition); *In re C.J.*, 208 Ill.Dec. 833, 650 N.E.2d at 293–94 (mother incarcerated out of state does not have right to have hearing continued until released from prison, but is entitled to review evidence by state and to present testimony on her own behalf); *In re Randy Scott B.*, 511 A.2d at 452, 454 (father testified through deposition, and father's counsel offered opportunity to reopen record after the deposition); *In re L.V.*, 482 N.W.2d at 259 (after state's evidence, testimony transcribed, parent is entitled to have deposition taken, and an opportunity to recall state's witnesses for recross-examination, and have their attorney call additional witnesses on his or her behalf); *Stevens*, 786 P.2d at 1299 (parent permitted to testify by telephone following state's presentation of any adverse witness in order for parent's counsel to be able to cross-examine effectively; parent must be able to consult with counsel); *In re Darrow*, 649 P.2d at 861 ("In those cases where the imprisoned parent's attendance cannot be procured safely and timely, the trial court should assure that the parent is afforded a full and fair opportunity

to present evidence or rebut evidence presented against him. . . . [G]ranting a continuance after [the state's] case-in-chief is one means of assuring the parent's right to defend.").

{19} As observed by our Supreme Court in *Oldfield v. Benavidez*, 116 N.M. 785, 791, 867 P.2d 1167, 1173 (1994), "[t]he government has a compelling interest in the welfare of children, and the relationship between parents and their children may be investigated and terminated by the state, provided constitutionally adequate procedures are followed. *Santosky v. Kramer*, 455 U.S. 745, 766 [102 S.Ct. 1388, 71 L.Ed.2d 599] (1982)." Similarly, in *Ronald A.*, 110 N.M. at 455, 797 P.2d at 244, the Court noted: "A parent's right in custody is constitutionally protected, and actions to terminate that right must be conducted with scrupulous fairness[.]" (Citation omitted.) The Court in *Ronald A.*, 110 N.M. at 455, 797 P.2d at 244, quoted with approval this Court's decision in *In re Laurie R.*, 107 N.M. 529, 534, 760 P.2d 1295, 1300 (Ct.App.1988), which held that "[p]rocedural due process requires notice to each of the parties of the issues to be determined and opportunity to prepare and present a case on the material issues." Similarly, in *Joe R.*, 1997–NMSC–038, ¶ 29, 123 N.M. 711, 945 P.2d 76, our Supreme Court held that a "[f]ather's rights and obligations as a parent are protected by his constitutional right to due process."

{20} In *In re Kenny F.*, 109 N.M. 472, 786 P.2d 699 (Ct.App.1990), *overruled on other grounds by In re Adoption of J.J.B.*, 117 N.M. 31, 39, 868 P.2d 1256, 1264 (Ct.App. 1993), *aff'd*, 119 N.M. 638, 894 P.2d 994 (1995), this Court considered the question of whether a parent's rights to due process were violated in the termination of parental rights proceeding. We stated that "[t]he essence of procedural due process in this context is a fair opportunity to be heard and present a defense." *Id.* at 475, 786 P.2d at 702. In *In re Kenny F.* the State offered to transport Mother to the hearing and tried to contact her on numerous occasions to make certain she was going to be at the hearing but she did not respond to the state's offer. *See id.* Although ultimately this Court de-

nied the mother's due process claim, our conclusion was premised upon the mother's failure to protect her own interests, despite the opportunity given to her by the state.

{21} In *Mathews* the United States Supreme Court adopted a three-part test detailing the criteria which govern the inquiry concerning whether due process has been satisfied in a particular case. *See id.*, 424 U.S. at 335, 96 S.Ct. 893; *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 111, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996); *Santosky*, 455 U.S. at 753–54, 102 S.Ct. 1388; *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 37, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). The *Mathews* Court stated that the question of whether due process has been accorded an individual necessitates resolution of the following factors:

> First, [consideration of] the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. 893.

{22} In reviewing proceedings wherein the children's court has ordered that the parent-child relationships be terminated, we review the evidence in the light most favorable to the prevailing party to determine if the record is sufficient to establish clearly and convincingly a basis for termination. *See In re Dennis S.*, 108 N.M. 486, 487, 775 P.2d 252, 253 (Ct.App.1989). However, in passing upon claims that the procedure utilized below resulted in a denial of procedural due process, we review such issues de novo. *See In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984); *In re Christopher D.*, 530 N.W.2d at 42 (stating "trial court's determination that [incarcerated parent] could meaningfully participate by telephone [in a termination of parental rights proceeding] is a constitutional fact. We review constitutional facts independently as conclusions of law."). *See generally* Steven Alan Childress

& Martha S. Davis, *Federal Standards of Review* § 17.05, at 17–21 (2d ed. 1992) ("[P]rocedure is probably always a pure question of law . . . .").

█ {23} Applying the balancing test set forth in *Mathews* to the record before us, we conclude that the procedures utilized in the children's court herein failed to satisfy due process requirements set forth in *Mathews*. Under the first factor, it is clear that Father's interest was significant. *See In re Ronald A.*, 110 N.M. at 455, 797 P.2d at 244 (a parent's right to custody of his or her children is constitutionally protected). Applying the second factor to the record before us, it is also evident that the risk of an erroneous deprivation of parental rights is greatly magnified unless alternative arrangements are made to permit an incarcerated parent who preserves his or her due process right to present evidence, to consult with his or her attorney, and to confront the witnesses called by the state. *See In re Laurie R.*, 107 N.M. at 534, 760 P.2d at 1300. Under the third factor, we acknowledge the state's vital interest in protecting the welfare of children. *See Ridenour v. Ridenour*, 120 N.M. 352, 355, 901 P.2d 770, 773 (Ct.App. 1995) ("Case law . . . recognizes the state's compelling interests in the welfare of its children.").

█ {24} After balancing each of the factors herein, we conclude that the second factor is determinative. Here, the procedure employed by the children's court had the effect of increasing the risk of error by denying Father an opportunity to defend against the charge of neglect and abandonment.

{25} In sum, we determine that because a fundamental liberty interest is implicated in proceedings involving the termination of parental rights, a parent who is incarcerated and is unable to attend the hearing on the state's petition to terminate parental rights is entitled to more than simply the right to cross-examine witnesses or to present argument through his attorney, or to present deposition testimony—he or she has the right to meaningful participation in the hearing. This right includes the right to review the evidence presented against him or her, present evidence on his or her behalf, and an

opportunity to challenge the evidence presented.

█ {26} Although procedural due process may be adapted to the particular circumstances of each case, the Nebraska Supreme Court, in *In re L.V.*, has cogently set forth the procedural due process required in proceedings seeking to terminate parental rights under factual circumstances analogous to the instant case. The court observed:

> When a person has a right to be heard, procedural due process includes notice to the person whose right is affected by a proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

*In re L.V.*, 482 N.W.2d at 257 (citations omitted). This enumeration of the requirements of procedural due process is consistent with the decision of our Supreme Court in *In re Ronald A.*, 110 N.M. at 455, 797 P.2d at 244, and this Court's decision in *In re Kenny F.*, 109 N.M. at 475, 786 P.2d at 702.

█ {27} By refusing to continue the hearing or adopt other procedures to permit Father's meaningful participation in the hearing, Father was denied an opportunity to defend against the allegations, to confront and cross-examine witnesses, and to present evidence on his behalf. As a result of the children's court's failure to implement any mechanism to allow Father to testify on his behalf, the risk of an erroneous deprivation of Father's constitutionally protected rights was greatly increased. In this case the issues before the children's court were whether Father was complying with the treatment plan and whether Father was using his best efforts to work towards a reunification of the family unit. Allegations were being made regarding Father's sincerity in regaining custody of the children and regarding Father's

ability to comply with the treatment plan and regain custody of the children. Without Father being able to provide evidence on his behalf, the only evidence before the children's court was that presented by the Department whose stated goal was to terminate Father's parental rights. Under these circumstances, Father was prejudiced by his inability to meaningfully participate in the hearing or to consult with his attorney.

{28} As observed by our Supreme Court in *In re Valdez*, 88 N.M. 338, 341, 540 P.2d 818, 821 (1975), "due process is a ... malleable principle which must be molded to the particular situation, considering both the rights of the parties and governmental interests involved." Here, although it is clear that Father could not be physically present at the proceeding, other procedures were available to permit him to participate in the proceeding. Father could have given testimony at the final hearing by telephone, or after the Department's witnesses were called, Father's deposition could have been taken so that he could have an opportunity to review such evidence and he could then be accorded an opportunity to respond. *See State ex rel. Human Servs. Dep't v. Gomez*, 99 N.M. 261, 262, 657 P.2d 117, 118 (1982) (holding telephonic hearing to determine if benefits being paid under aid to dependent children should be terminated did not violate due process requirements); *see also* Michael J. Weber, Annotation, *Permissibility of Testimony by Telephone in State Trial*, 85 A.L.R.4th 476 (1991) (concluding telephone testimony in parental termination of rights proceedings consistent with procedural due process). We note that this case is distinguishable from *Evans v. State, Taxation & Revenue Department*, 122 N.M. 216, 216, 922 P.2d 1212, 1212 (Ct.App.1996), where the statute at issue mandated that license revocation hearings occur within the county where the offense occurred, and therefore telephonic hearings were not permitted. Here, there is not similar statutory language.

{29} Alternatively, a second continuance could have been granted for a brief period of time (thirty days or so) to see if Father was released from the Texas jail. Failing that, the children's court could have ordered that the Department present its evidence, then that the matter be briefly recessed so that Father was given an opportunity to review the evidence, discuss it with his attorney, and then the hearing be reconvened so Father could present his evidence by telephone or deposition, and an opportunity through his counsel to effectively cross-examine the Department's witnesses. We do not believe that utilization of any of these procedures utilized in other states would greatly burden the Department.

{30} We are mindful of the fact that cases involving the termination of parental rights should be expeditiously concluded, that the need for finality in these cases is great, and that·it is important that the children involved have a sense of stability and permanence in their lives. At the same time, a court cannot ignore a parent's fundamental liberty interest in the care and custody of his or her children. Thus, before a court can irrevocably sever the parent-child bond, it must ensure that the parent is given a fair opportunity to present evidence and defend his or her fundamental parental rights. Father was deprived of that opportunity here.

CONCLUSION

{31} The order terminating Father's parental rights is reversed and the matter is remanded to the children's court for a new hearing consistent with the matters stated herein.

{32} IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.