SUTIN, Judge (dissenting). {22} I respectfully dissent. I would affirm the district court’s order dismissing Guardian from the abuse and neglect proceedings. 1. Introductory Clarifications {23} Two divisions of the Second Judicial District Court are at play in regard to the dismissal issue on appeal. See LR2103(A)(1), (4) (stating that the Second Judicial District Court judges and clerks are divided into four courts, two of which are the children’s court and the domestic relations court, and enumerating the cases within the purview of each court). The children’s court division handles Children’s Code abuse and neglect proceedings. See § 32A-1-4(C) (stating that within the context of the Children’s Code, “court” means the children’s court division of the district court); § 32A-1-8(C) (stating that the children’s court shall have jurisdiction to decide all matters incident to the children’s court proceedings). The domestic relations division of the district court handles, with enumerated exceptions not relevant here, “all cases of a domestic relations nature}.]” LR2-103(A)(4) NMRA. Chapter 40 of New Mexico’s statutes, entitled Domestic Affairs, includes the KG A within Article 10B. Thus, the domestic relations division of the district court handles guardianship proceedings, including appointment of a guardian under the KG A. See § 40-1 OB-7 (governing the appointment of a kinship guardian); § 40-10B-14 (“The court appointing a guardian pursuant to the [KGA] retains continuing jurisdiction ofthe matter.”). In Abuse and Neglect Act proceedings, the children’s court has jurisdiction over guardians appointed under the KGA. See § 32A-1 -8(A)(3), (4) (stating that the children’s court has exclusive original jurisdiction of all proceedings under the Children’s Code in which a child is alleged to be abused or neglected); § 32A-1-8(C) (stating that in abuse and neglect proceedings, the children’s court has “jurisdiction over both parents to determine the best interest of the child and to decide all matters incident to the court proceedings”); § 32A-1-4(I) (defining “guardian” within the context of the Children’s Code, in relevant part, as “a person appointed as a guardian by a court”). 2. Clarification Regarding Guardian’s Appeal {24} In the proceedings under the Act, on September 3, 2010, Guardian pleaded no contest to the allegations against her in the abuse and neglect petition. On September 17, 2010, the children’s court entered a stipulated judgment and disposition holding that as to Guardian, Children were neglected children as defined in the Children’s Code. Guardian did not then and does not now appeal that order. {25} On April 17, 2012, the children’s court ordered the permanency plan for Children to be changed from reunification to adoption. In its April 17, 2012, order, the children’s court found, among other things, that Guardian had “not made diligent sufficient efforts to comply with and cooperate in the treatment plan ordered by the [cjourt”; she had “not made sufficient progress toward alleviating the causes necessitating the removal of. . . [CJhildren”; Children’s “best interests will be served by maintaining custody with [CYFD] and implementing a further treatment plan to promote the possible adoption of... [CJhildren”; and “[t]here is no evidence to indicate that [Guardian was] . . . equipped to take custody of. . . [C]hildren.” Guardian was a party to the abuse and neglect case when this order was entered; however, Guardian did not then and does not now appeal that order. {26} On July 2, 2012, the children’s court entered an order dismissing Gixardian from the abuse and neglect case. Guardian appeals exclusively from this order. {27} On July 26, 2012, CYFD filed a motion for open adoption mediation. In this appeal, Guardian does not raise any argument in regard to the motion for open adoption mediation. Nor does Guardian base her appeal on any alleged deprivation of her rights under the Adoption Act. See generally NMSA 1978, §§ 32A-5-1 to -45 (1993, as amended through 2012). {28} Guardian raises two issues on appeal. First, Guardian argues that the children’s court erred in dismissing her from the abuse and neglect case without first affording her the process due a parent under Sections 32A-4-28 and 32A-4-29, governing the termination of parental rights or, alternatively, without first revoking her guardianship relationship under Section 40-10B-12, governing the revocation of a kinship guardianship. Second, Guardian argues that because she “served as Children’s parent for more than three years before the filing of the petition” she “should be afforded the same or similar due process rights as a biological parent.” 3. The Termination of Parental Rights Laws Do Not Apply to Guardian {29} The Children’s Code defines a “guardian” as “a person appointed as a guardian by a court or Indian tribal authority or a person authorized to care for the child by a parental power of attorney as permitted by law[.]” Section 32A-1-4(I). The Children’s Code defines a “parent” as “a biological or adoptive parent if the biological or adoptive parent has a constitutionally protected liberty interest in the care and custody ofthe child[.]” Section 32A-1-4(P); see State ex rel. Children, Youth & Families Dep’t v. Ruth Anne E., 1999-NMCA-035, ¶ 10, 126 N.M. 670, 974 P.2d 164 (recognizing that natural parents have a “fundamental liberty interest. . . in the care, custody, and management of their child[ren]” (internal quotation marks and citation omitted)). Thus, under the Children’s Code, a guardianship is a legally cognizable relationship; however, it is controlled and delimited by a court or by the child’s parent(s). Unlike a parent-child or adoptive parent-child relationship, nothing in the Kinship Guardianship Act, the Children’s Code, or our case law provides that a guardian has a constitutionally protected liberty interest in regard to the children to whom she is guardian. Nor, in this case, does Guardian provide any authority to support a conclusion that she had a constitutionally protected liberty interest in Children. {30} Because aparenthas ajudicially and legislatively recognized constitutionally protected liberty interest in his or her child, the children’s court cannot terminate the parent-child relationship without affording the parent due process. Ruth Anne E., 1999-NMCA-035, ¶ 10. The process due a parent in terms of terminating parental rights to a child is outlined in Sections 32A-4-28 and - 29. Sections 32A-4-28 and -29 do not apply to guardians. That Sections 32A-4-28 and-29 apply to parents but not to guardians may be fairly construed as an implicit statement by the Legislature that the process due a parent is not due a guardian because a guardian has no constitutionally protected interest in the child. Thus, Guardian’s argument, in this case, that she should not have been dismissed from the case without first having had her rights terminated pursuant to Sections 32A-4-28 and -29, is legally unfounded. 4. Guardian’s Rights as to Children Were Adjudicated by the Children’s Court {31} I disagree with Guardian and the majority that the children’s court could not dismiss Guardian from the case until the kinship guardianship was formally revoked pursuant to Section 40-1 OB-12 by the district court that appointed Guardian. Opinion ¶ 9. See § 40-10B-12 (authorizing the court to revoke a guardianship created under the KGA); § 40-1 OB-14 (stating that “[t]he court appointing a guardian pursuant to the [KGA] retains continuing jurisdiction of the matter”). Pursuant to Section 40-10B-13(A), Guardian had the “legal rights and duties of a parent except the right to consent to adoption of the child[.]” Thus, Guardian had the legal right to care and custody of Children. Cf. § 32A-1-4(P) (stating that a parent’s interest in a child is one of care and custody). Yet the right of a parent to the care and custody-of his or her children is not absolute; it is subject to the district courts’ authority, pursuant to the Abuse and Neglect Act, of being interrupted and, under certain circumstances, terminated. See State v. Sanders, 1981-NMCA-053, ¶ 12, 96 N.M. 138, 628 P.2d 1134 (stating that parents do not have an absolute right to the custody of their children); see also § 32A-4-6 (permitting the CYFD to take custody of a child); §§ 32A-4-28, -29 (permitting district courts to terminate parental rights). By extension, neither does a guardian have an absolute right to care and custody of a child. {32} Guardian was stripped of her right to custody of Children when she was adjudicated to have neglected Children, and Children were ordered to remain in the legal custody of CYFD. See § 32A-l-4(0) (stating that “legal custody” includes, among other things, “the right to determine where and with whom a child shall live[,] the right and duty to protect, train},] and discipline the child and to provide the child with food, shelter, personal care, education},] and ordinary and emergency medical care”). Thereafter, CYFD, in its capacity as Children’s legal custodian, worked with Guardian toward reunification with Guardian; however, in spite of CYFD’s efforts, reunification of Children with Guardian was ultimately determined by CYFD and by the court not to be in Children’s best interests. As such, the children’s court determined that adoption was the most appropriate permanency plan for Children. The children’s court’s adjudications in regard to Guardian’s neglect and custody rights, together with changing Children’s permanency plan to adoption, rather than reunification with Guardian, was not only authorized under the Act, it effectively and lawfully terminated Guardian’s kinship guardianship rights of custody and care and was tantamount to a revocation of those care and custody rights, because it constituted formal recognition of the fact that Guardian, by her own actions and failures, no longer had a right to care and custody of Children. Thus, whether or not the children’s court could formally revoke the kinship guardianship, absent the right to care and custody of Children, the kinship guardianship was lawfully reduced to a nominal relationship, to be revoked, if necessary, in an ancillary proceeding before the domestic relations division of the district court. {33} The permanency plan having been changed from reunification to adoption, CYFD moved to dismiss Guardian from the abuse and neglect proceedings. In its dismissal motion, CYFD stated, in part, that it was “filing a motion for [termination of [pjarental [rjights and [Guardian] does not have parental rights to terminate and will not benefit from following a treatment plan and whether she follows a treatment plan does not affect the final permanency for . . . [Cjhildren” because “[Cjhildren cannot be safe with [Guardian].” Children’s guardian ad litem concurred in CYFD’s motion. After taking evidence and hearing testimony over the course of a two-day hearing on CYFD’s motion to dismiss, the children’s court granted the motion. {34} The practical effect of the dismissal of Guardian was to alleviate CYFD of any obligation to provide Guardian with a treatment plan and the related assistance in achieving the treatment goals. Guardian has not shown any further practical effect of her dismissal from the abuse and neglect proceedings, nor has the majority done so. Having ultimately determined that reunification with Guardian was not a viable permanency plan, a determination that Guardian has not appealed or shown to be error, requiring CYFD to continue to implement a treatment plan for Guardian would be of no benefit to Children, and it would require CYFD to expend time and other resources on Guardian to no avail. There no longer existed any question as to Guardian’s right to continue care and custody of Children. {35} Further, as CYFD moved toward its next step, which was to terminate the parental rights of Children’s biological parents[2],1 see no rational or practical legal basis on which to hold that Guardian had a right to continue as a party to that proceeding. As demonstrated earlier, Sections 32A-4-28 and -29, governing the termination of parental rights, did not apply to Guardian. Guardian became superfluous in the proceedings to terminate the biological parents’ parental rights to Children and to move into a permanency plan for adoption. Any care and custody rights Guardian may have had were lawfully eliminated pursuant to the children’s court’s authority under the Act. 5. The Children’s Court’s Ruling Prevented Unnecessary, Undesirable Delay {36} The parties and Children will be adversely affected by the majority’s holding that “the order dismissing Guardian and all subsequent orders entered without notice to her must be reversed.” Opinion ¶ 2. To hold that Guardian may not be dismissed from the case until the guardianship is revoked will result in further delay, indefinite limbo for Children, and inappropriate further proceedings, all to Children’s detriment. Children will be adversely affected by the delay that results from the pendency of the children’s court proceedings awaiting a revocation proceeding in the domestic relations court. One must also consider the delay that could result from a potential appeal from the revocation determination. While these court proceedings are ongoing, Children will be haunted with uncertainty and deprived of permanency and stability. See State ex rel. Children, Youth & Families Dep't v. Mafin M., 2003-NMSC-015, ¶ 24, 133 N.M. 827, 70 P.3d 1266 (“[I]t is important for children to have permanency and stability in their lives, [therefore] termination proceedings should not continue indefinitely.”). In weighing the potential harm to the dismissed Guardian versus the indeterminant, in-limbo status of Children, the scale dips heavily in favor of Children. The children’s court’s adjudications regarding Guardian stand. They cannot be ignored. Their factual and legal validity has not been attacked on appeal. As a matter of policy, if not res judicata, the adjudications put an end to Guardian’s right to custody of and to provide care to Children. Cf. Pielhau v. State Farm Mut. Auto. Ins. Co., 2013-NMCA-112, ¶¶ 7 n.1, 8, 314 P.3d 698 (stating that res judicata, which term encompasses both issue and claim preclusion, bars re-litigation of claims or issues that were finally adjudicated on the merits in an earlier action, involve the same parties, and involve the same cause of action). There exists little, if any, reason to dwell on a formal KGA revocation process at this point, particularly in light of the facts that Guardian has been adjudicated neglectful of Children and that the children’s court has determined that Children’s best interests will be served by continued departmental custody and potential future adoption. These un-appealed adjudications may be judicially noticed by and should be binding on the domestic relations court, causing and, if necessary, requiring that court to revoke the kinship guardianship. The majority opinion gives no reason other than form or technicality over substance to reverse every order entered by the children’s court after Guardian was dismissed, returning the abuse and neglect proceedings to a preparental rights termination status, merely to force CYFD to pursue a formal revocation in the domestic relations court of the guardianship pursuant to the KGA. 6. Guardian’s Due Process Contention Has No Merit {37} Guardian argues that having “served as Children’s parent for more than three years” before the abuse and neglect petition was filed, she “should be afforded the same or similar due process rights as a biological parent.” Further, Guardian observes that the non-precedential lead opinion in In re Guardianship of Victoria R. recognized that “a growing number of jurisdictions . . . provide legal recognition and protection to psychological parent-child (or equivalent) relationships.” 2009-NMCA-007, ¶ 15, 145 N.M. 500, 201 P.3d 169; see id. ¶ 23 (Pickard, J., special concurrence). Guardian concludes her due process argument by stating that “due process requires any dismissal of Guardian from the abuse/neglect proceedings comport with the procedures set forth in the [Kinship Guardianship Act] and in the [Abuse and Neglect] Act.” {38} For the reasons set out earlier in this dissent, Guardian’s contention that she could not be dismissed from this case unless she was afforded a termination of parental rights hearing or until her guardianship was revoked, is unavailing. So too is Guardian’s observation that some courts have recognized “psychological parent-child” relationships. It is not accompanied by an argument demonstrating how the notion of a psychological parent-child relationship applies here, or how the argument has constitutional significance. Nor is it accompanied by á citation to evidence in the record demonstrating that such a relationship was established between her and Children in this case. Finally, although Guardian cites the due process balancing factors applicable to the question whether a parent’s due process rights were protected in the termination of parental rights proceedings, she does not develop an argument demonstrating how those factors apply here. See Mafin M., 2003-NMSC-015, ¶¶ 17, 19 (stating that, in determining whether due process was satisfied in a termination proceeding, the appellate courts consider (1) the parent’s interest; (2) “the risk to [the parent] of an erroneous deprivation through the procedures used”; (3) “the probable value, if any, of additional or substitute procedural safeguards”; and (4) “the government’s interest”). Guardian’s undeveloped arguments provide no basis for reversal. State ex rel. Children, Youth & Families Dep’t v. Marsalee P., 2013-NMCA-062, ¶ 20, 302 P.3d 761 (recognizing that this Court does not review unclear or undeveloped arguments). 7. The Majority Opinion’s Holding in Regard to Adoption {39} As the case moves forward, assuming that CYFD succeeds in its motion to terminate the rights of both of Children’s biological parents, and further assuming CYFD succeeds in finding potential adoptive parents, CYFD will, pursuant to the court-approved permanency plan, move toward adoption proceedings. See §§ 32A-5-17(A)(2), (4)-(5), 32A-5-19(A) (stating that as a prerequisite to adoption, a child’s mother and father must consent to the adoption or relinquish their parental rights to a child, but consent or relinquishment is not required when the parents’ rights in regard to the child have been terminated). The record does not reflect the stage of any adoption-related proceedings. The majority’s discussion of the prospective adoption is hypothetical and goes not only beyond the issues raised by Guardian[3] but also beyond the issues in this case. {40} Adoption proceedings are governed by the Adoption Act. See §§ 32A-5-1 to -45; see also § 32A-4-28(F) (stating that pursuant to the Act, if a parent’s parental rights are terminated, there is no appeal from that termination, and the requirements of the Adoption Act are satisfied, the children’s court may enter an adoption decree to take effect sixty days after the termination of parental rights). Here, the adoption process will presumably begin with CYFD placing Children in the home of the prospective adoptive parent(s). Section 32A-5-12(A)(l) (“No petition for adoption shall be granted by the [domestic relations] court unless the adoptee was placed in the home of the petitioner for the purpose of adoption ... by [CYFD.]”). Within 120 days of the placement, the prospective adoptive parent(s) must petition the domestic relations court for adoption. Section 32A-5-25(A) (governing the time for filing a petition for adoption); § 32A-5-26 (stating the required contents of the petition for adoption). {41} The petition for adoption must be served on a number of people, including “the legally appointed . . . guardian of the adoptee[.]” Section 32A-5-27(A)(4). Proof of service of the notice on all persons for whom notice is required, including a legally appointed guardian, shall be filed with the court before any hearing adjudicating the rights of that person. Section 32A-5-27(I). A person who has been served with a petition for adoption and wishes to respond to it by contesting the adoption has twenty days to do so. Section 32A-5-27(E). The children’s court “shall conduct hearings on the petition for adoption so as to determine the rights of the parties}.]” Section 32A-5-36(A). “The court shall grant a decree of adoption if it finds that the petitioner has proved by clear and convincing evidence that[, among other things,] all necessary consents, relinquishments, terminations[,] or waivers have been obtained[.]” Section 32A-5-36(F)(3). {42} In this case, the majority holds that “[a]n adoption cannot take place while the kinship guardianship still exists.” Opinion ¶ 16. In my view, this holding is problematic for three reasons. First, the holding addresses a legal issue of first impression that was not raised or considered in the children’s court, nor was it briefed by the parties, and is, therefore, not properly before this Court. Second, the holding is not clearly supported by the Adoption Act, nor is it clearly supported by the KGA. {43} The KGA provides that a kinship guardian does not have the right to consent to adoption of a child. Section 40-10B-13(A). Whether this provision should be interpreted as standing for the converse proposition that a kinship guardian does not have the right to contest an adoption is not at issue in this appeal and is not analyzed by the majority. Thus, I leave this question of legislative intent for another day when it may be properly preserved, researched, and analyzed. Further, although the Adoption Act gives a guardian a right to contest an adoption, there is no indication in that Act that the court would be prohibited by the guardian’s contestation from granting a decree of adoption. Nor is there any clear indication in the Adoption Act that the legal relationship created by a kinship guardianship order must be revoked prior to an adoption decree. Relying on Section 32A-5-36(F)(3), the majority observes that “all necessary consents, relinquishments, terminations},] or waivers” must be obtained before an adoption decree may be entered; however, the majority’s assumption that the revocation of a kinship guardianship comes within this category is unsupported by authority or analysis. Without more, I do not assume that the kinship guardianship stands in the way of an adoption that is in the best interests of the adoptees. See § 32A-5-36(F)(7) (stating that the court shall grant a decree of adoption if it finds that the petitioner has proved by clear and convincing evidence that “the petitioner is a suitable adoptive parent and the best interests of the adoptee are served by the adoption”). {44} Third, I see no basis on which to reverse any of the children’s court’s orders in the abuse and neglect case on the basis of the court’s order changing Children’s permanency plan from reunification to adoption. Guardian did not appeal the children’s court’s order in that regard, and it has no bearing on the yet-to-occur adoption proceedings. As stated earlier in this dissent, adoptions are governed by the Adoption Act. The Adoption Act requires the prospective adoptive parents to serve notice of the adoption petition upon guardians, including those appointed under the KGA, and to file proof of service with the court demonstrating that the guardian was served with the notice. Sections 32A-5-27(A)(4), (I). A court-appointed guardian is not precluded in a separate Adoption Act proceeding to state his or her views in regard to adoption. When and if CYFD succeeds in finding adoptive parents for Children, if the strictures of the Adoption Act are not followed, Guardian may take steps to remedy that illegality. We should not assume, without any evidence to the effect, that Guardian’s rights under the Adoption Act will be overlooked or violated or that her dismissal from the abuse and neglect proceedings has any effect on the future adoption proceedings. CONCLUSION {45} I would affirm the children’s court’s order. JONATHAN B. SUTIN, Judge At the time that this Opinion was filed, the parental rights of Children’s biological father had been terminated by the district court. The majority’s holding will cause the district court’s order in that regard to be reversed. Opinion ¶ 2. Guardian does not cite the Adoption Act in either of her briefs, nor does she develop an argument regarding the implications of dismissal from the abuse and neglect case as it relates to the adoption issue.