This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37934**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

      Petitioner-Appellee,

v.

**ESTHER M.,**

      Respondent-Appellant,

and

**MIGUEL E.,**

      Respondent,

**IN THE MATTER OF ISAIAH M.,
and SAMUEL M.,**

      Children.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY
Pedro G. Rael, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Jane B. Yohalem
Santa Fe, NM

for Appellant

Sherrie Lee Trescott
Rio Rancho, NM

Guardian Ad Litem

**DECISION**

**VANZI, Judge.**

**{1}**     Esther M. (Mother) appeals the adjudication of neglect and termination of her parental rights to Samuel M., born July 11, 2011, and Isaiah M., born September 19, 2012 (Children). Mother argues that: (1) she received ineffective assistance of counsel at the custody stage; (2) her claim of ineffective assistance of counsel at adjudication should be considered on appeal; and (3) that she was denied due process at the adjudication. The Children, Youth, and Families Department's (CYFD) concedes that the failure of Mother's counsel to appeal the adjudicatory judgment is conclusively presumptive of ineffective assistance of counsel. We agree with Mother and CYFD on this issue but we nevertheless affirm the adjudicatory judgment and, therefore, the judgment terminating parental rights (TPR) of Mother pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005).

**{2}**     We set out only the pertinent facts and law in connection with the issues analyzed because the parties are familiar with the facts and procedural posture of this case and because this is a non-precedential expedited bench decision. *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

**Background**

**{3}**     The following facts surrounding Children's placement in the CYFD's custody are contained in the affidavit for ex parte custody order. On October 30, 2016, CYFD received a referral alleging that Mother "rammed into another vehicle while under the influence of alcohol" with Children in the back seat, she then went to her boyfriend's house, broke out the windows, and attacked her boyfriend with a hammer. CYFD subsequently interviewed Mother on November 2, 2016, at the Metropolitan Detention Center (MDC) where she was detained. Mother denied being in a car wreck or that she had been drinking, and told CYFD that Children were not with her that evening but were staying with Mother's sister, Rosalia, and Mother's grandmother, Gertrude. Mother indicated that Children were living with Rosalia and their grandmother, and that Rosalia had been taking care of Children for approximately eight months.

**{4}**     In addition to the above, the affidavit stated that Mother had been arrested numerous times, including for battery against a household member, aggravated battery upon a peace officer, aggravated DWI, leaving the scene of an accident, aggravated assault with a deadly weapon, battery on a healthcare worker, driving on a revoked

license, abuse of a child, assault on a peace officer, criminal damage to property, and various probation violations. The affidavit further noted that Mother had six prior referrals to CYFD, of which two were unsubstantiated and four were substantiated for abuse/neglect. Samuel reported that when he and his brother get into trouble, his Mother "slaps their head, face, and spanks them. [He] also stated his mom calls them bad names and uses a lot of bad words."

**{5}**     After she was released from MDC, Mother did not contact CYFD nor did she attend the legal staffing at CYFD on November 10, 2016. As a result of a prior—and unsuccessful—attempt at in-home assistance to Mother concerning another child, CYFD decided to forgo in-home services and take Children into state custody.[1] When CYFD officials went to pick up Children, however, they learned that Mother had dis-enrolled Children from school in Grants and that she "was going to Albuquerque, then to Colorado to 'start a new life.' "

**{6}**     CYFD filed the abuse and neglect petition along with the motion for ex parte custody order on November 22, 2016. However, Children were not taken into custody until about December 3, 2016, when Mother returned to Grants. The petition alleged that Children had suffered physical, emotional or psychological abuse, as well as neglect, and that Mother had placed Children in a situation that might endanger their life or health. In addition, the petition alleged that pursuant to NMSA 1978, Section 32A-4-2(F)(2) (2016, amended 2018), Children were without proper parental care and control or subsistence, education, medical, or other care or control necessary for their well-being because of the faults and habits of Mother.

**{7}**     CYFD filed a hearing request for temporary custody on November 28, 2016, and noted that the matter needed to be heard by December 8, 2016. It also filed a motion to appoint counsel for Mother, which the district court granted. The following day, the district court set the custody hearing for December 7, 2016, and set the adjudicatory hearing for January 4, 2017. Because it had not yet served Mother, CYFD filed an unopposed motion for extension of time in which to commence the custody hearing, which the district court granted. The custody hearing was continued until December 21, 2016.

**{8}**     On December 16, 2016, Mother's court-appointed attorney (the first of several) filed a notice of declination of appointment based on a conflict. The notice stated, among other things, that counsel previously represented Rosalia and that there was currently pending a restraining order between Rosalia and Mother. The district court allowed Mother's first attorney to withdraw and continued the December 21, 2016 hearing so that substitute counsel could be appointed. On December 22, 2016, CYFD filed a second unopposed motion for extension of time to commence the custody hearing. The court rescheduled the custody hearing for January 4, 2017, the same date as the adjudicatory hearing.

---

[1] In 2015 mother stated she was "done with CYFD, and wanted nothing to do with the department."

**{9}** At the January 4, 2017 hearing, CYFD told the district court that Mother was incarcerated at MDC and that a substitute attorney had not yet been appointed. The court orally extended custody of Children with CYFD and issued a written order appointing counsel for Mother. The custody hearing was re-set for February 15, 2017.

**{10}** Mother's newly-appointed attorney met with Mother at MDC about a week before the hearing and, on February 15, 2017, Mother was transported to district court. At the hearing, the parties discussed whether the court should hold a custody hearing or an adjudication disposition that day. The court stated that "if nobody objects, to me it's just another hearing" and "if notice was given of an adjudicatory hearing, then we'll do that instead." Mother's attorney agreed that it was his understanding that the parties were there for an adjudicatory hearing. He also said that "based on the fact that [Mother] was incarcerated at the time that the original custody hearing should have taken place . . . I'm not sure what our legal challenge could be since [Mother] would be in a position where she could not have taken custody of [Children] at that time." Thus, he said, Mother would waive the custody hearing because it would be more advantageous to go forward with the adjudicatory hearing with its higher burden of proof. Mother's attorney reserved objection and stated that he was prepared to contest the adjudicatory hearing which then followed.

**{11}** The adjudicatory hearing took place on two dates and two witnesses testified. Mother testified on February 15, 2017, and Albuquerque Police Department (APD) Officer Vicente Varela testified briefly on June 28, 2017.

**{12}** Mother testified that she had been incarcerated at MDC on charges of assault and escape from a police officer from December 19, 2016 through July 31, 2017. She admitted being homeless or in jail much of the time and that she had placed Children with her family where she wanted them to remain. And although Rosalia had a restraining order against Mother, and had a history with CYFD in the past, Mother said Rosalia had changed and was doing well. According to Mother, Mother took care of Children with family support even when she was in jail and that she quickly found employment when she got out of jail.

**{13}** Mother also testified about her prior charges including for battery on a healthcare worker, and for violation of her probation which resulted in her serving jail time. Mother was once charged with child abuse and had previously been set by the court to participate in substance abuse and alcohol abuse classes, as well as domestic violence batterer's education. In addition to the various prior charges and referrals to CYFD, Mother had an upcoming court date scheduled for March 14, 2017, for violation of a restraining order involving her daughter's father that had been filed two years previously.

**{14}** When asked about the events that brought Children into custody, Mother asserted: she had not been driving, an alcohol test established she was not intoxicated, the charges of breaking windows and attacking her boyfriend with a hammer were false, Children were not with her that evening, and that all the charges stemming from the

events that formed the basis of the petition had been dismissed. She also testified that she was never intoxicated in front of Children, never used drugs when Children were with her, and did not yell at Children but instead used a five-minute time out to discipline them.

**{15}** At the second hearing on June 28, 2017, Officer Varela testified about the December 19, 2016 events. He stated that on that date, he was called to an apartment complex where dispatch said a woman would be waiting for him. Officer Varela found Mother who was "erratic" and acting "strange." When he asked Mother if she was on drugs or alcohol, Mother responded that she had not used methamphetamine for several weeks. Mother told Officer Varela that she and her boyfriend had gone to the convenience store to purchase alcohol and, while there, she had asked the clerk to call police because she thought her boyfriend was going to hit her.

**{16}** While with Mother, Officer Varela learned that another woman was at a local emergency room with stab wounds and that Mother may have been involved in the altercation. Officer Varela concluded that there was probable cause to arrest Mother for the incident. Mother became violent and aggressive, and proceeded to kick out the windows in Officer Varela's police car. She also broke the radar that was mounted in the back window.

**{17}** As the hearing was coming to a close, the district court asked counsel whether Mother was the same person who was tried by a jury the previous year for assault and battery on a healthcare worker. The court recalled a guilty verdict and said, "[S]he is the same person" and "I can't get those things out of my mind." On November 14, 2017, the district court entered a judgment adjudicating Children as abused and neglected by Mother pursuant to Section 32A-4-2(G)(2), (4) .

**{18}** After a trial in early October, the district court entered an order on December 12, 2018, terminating Mother's parental rights to Children pursuant to Section 32A-4-28(B)(2). This appeal followed.

**Discussion**

**Counsel's Failure to Insist on a Ten-Day Custody Hearing Was Not Ineffective Assistance of Counsel**

**{19}** Mother contends that the failure of any of her attorneys to insist on a ten-day custody hearing amounted to ineffective assistance of counsel. A claim of ineffective assistance of counsel presents a mixed question of law and fact, which we review de novo. *See State v. Tafoya*, 2012-NMSC-030, ¶ 59, 285 P.3d 604. "A prima facie case of ineffective assistance of counsel is made on appeal where: (1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *State v. Smith*, 2016-NMSC-007, ¶ 62, 367 P.3d 420 (internal quotation marks and citation omitted). Prejudice is established by a showing that there

is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different. *State v Brazeal*, 1990-NMCA-010, ¶ 23, 109 N.M. 752, 790 P.2d 1033. In reviewing an ineffective assistance of counsel claim, we must look at the proceedings as a whole. *State ex rel. Children, Youth & Families Dep't v. David F., Sr.*, 1996-NMCA-018, ¶ 24, 121 N.M. 341, 911 P.2d 235.

**{20}** Here, Mother fails to establish that her counsel was ineffective. In fact, other than citing the standard, Mother does not demonstrate that counsel acted unreasonably, that he did not have a rational strategy for his decision to proceed with the adjudicatory hearing, or that his actions were prejudicial. To the contrary, Mother's counsel set forth a "plausible, rational" basis for his decision, noting that Mother would waive the custody hearing because the adjudicatory hearing has a higher burden of proof than the custody hearing and that, unlike the custody hearing, the Rules of Evidence apply at the adjudicatory hearing. In addition, counsel told the district court that the probable cause standard would likely have been met as Mother was incarcerated at the time the custody hearing would have been held. And because Mother was incarcerated—and had been incarcerated since before December 12, 21, 2016—she was not a position to have custody of Children. Given the above facts and the efforts of counsel to diligently represent Mother at the adjudicatory hearing with its higher burden of proof, we conclude that Mother's counsel was adequate and his decision to waive the custody hearing did not prejudice Mother.

**{21}** We are also not persuaded by Mother's argument that the adjudicatory and TPR judgments must be vacated because the district court did not hold a custody hearing. We acknowledge that NMSA 1978, Section 32A-4-18(A) (2016, amended 2019) requires that a custody hearing be held within ten days of the filing of the neglect/abuse petition. However, Mother provides no authority for her contention that the adjudicatory judgment must be reversed because the custody hearing was not held in this case and we have found none. Where a party cites no authority to support an argument, we may assume no such authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329.

**Although the Failure of Mother's Attorney to Appeal the Adjudicatory Judgment Is Conclusively Presumptive of Ineffective Assistance of Counsel, Mother Was Not Denied Due Process**

**{22}** Mother contends that even though she objected to the district court's decision at the adjudication, counsel's failure to file a timely notice of appeal or, in the alternative, to obtain a waiver of the right to appeal from Mother, constitutes presumptive ineffective assistance of counsel. CYFD does not contest this point. Although we are not bound by CYFD's concession, we conclude that under the circumstances of this case, counsel's failure to file a timely notice of appeal, or to obtain an explicit waiver from Mother, rises to the level of presumptive ineffective assistance of counsel. *See State ex rel. Children, Youth & Families Dep't v. Lorena R.*, 1999-NMCA-035, ¶¶ 9-10, 126 N.M. 670, 974 P.2d 164 (stating that a conclusive presumption of ineffective assistance of counsel exists where a notice of appeal or a waiver of the right to appeal is not filed within the time limit

prescribed). Accordingly, we treat Mother's notice of appeal from the adjudicatory judgment as timely. We now turn to Mother's argument that she was denied due process at the adjudicatory stage of the proceeding because she was not given an opportunity to appear before an impartial decision maker.

**{23}** "[W]hether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 17, 133 N.M. 827, 70 P.3d 1266. Mother acknowledges that she failed to preserve this issue in the district court and we therefore review for fundamental error only. *See* Rule 12-321(B)(2)(c)-(d) NMRA (providing the appellate court discretion as an exception to the preservation rule to review questions involving fundamental error or fundamental rights); *State v. Sosa*, 1997-NMSC-032, ¶ 23, 123 N.M. 564, 943 P.2d 1017. The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice. *State v. Jett*, 1991-NMSC-011, ¶ 19, 111 N.M. 309, 805 P.2d 78.

**{24}** Mother argues that the district court judge in this case was not impartial because he improperly relied upon his opinion of Mother from a prior proceeding involving Mother's criminal trial for assault and battery on a healthcare worker over which he presided. As we have said,

> Every litigant is entitled to a fair and impartial trial. A fair and impartial trial, the very desideratum of the administration of justice, is a judicial process by which a court hears before it decides; by which it conducts a dispassionate inquiry, and renders judgment only after trial. The antithesis of a fair and impartial trial is prejudgment by a court. A tendency to prejudge, or a prejudgment of a particular controversy, or of a class or character of cases only sucks the administration of justice down into the eddy of disrepute.

*State v. Pacheco*, 1973-NMCA-155, ¶ 9, 85 N.M. 778, 517 P.2d 1304 (internal quotation marks and citation omitted).

**{25}** Here, Mother has not established that the district court was so impartial that recusal was required. Contrary to Mother's assertion that the district court initially "viewed the evidence as insufficient to support a finding of abuse or neglect by Mother" and changed his opinion "with only minutes remaining" on the second day of the hearing after asking if Mother was the same person who was tried for assault and battery on a healthcare worker, the record establishes that the district court in fact knew of Mother's assault charge on the first day of the hearing. Four months earlier, on February 15, 2017, when Mother was being questioned about a charge of aggravated battery upon a peace officer, the district court interjected stating "I have [a] recollection that I presided over a jury trial and she was a defendant with two aggravated batteries against healthcare workers. I don't think they were police officers." Additionally, Mother herself testified that she had been convicted of aggravated battery upon a healthcare worker. This was not a situation of "impermissible bias based on something learned by the

district court outside the record in the case," as Mother contends. Rather the record makes clear that Mother's conviction for the assault and battery on a healthcare worker was properly acquired in the course of the proceedings and was known to everyone on the first day of the adjudicatory hearing. In short, the information did not surface for the first time in June 2017 during Officer Varela's testimony but was known all along.

**{26}**     Mother argues "there is a reasonable likelihood that the outcome of the adjudicatory hearing would have been different had the [district court] not remembered the prior trial and called up [its] intense feelings about Mother." We are not persuaded. Notwithstanding the district court's recollection of Mother's prior conviction or comments that "she is the same person" and "I can't get those things out of my mind. I am trying to . . . ," there was ample evidence at the hearing to support the district court's finding that Mother had neglected Children. Mother had been in jail on various charges or homeless much of the time, her sister Rosalia had a restraining order against Mother, the father of her daughter had a restraining order against Mother, Mother was once charged with child abuse, and had previously been ordered by the court to participate in substance abuse and alcohol abuse classes as well as domestic violence batterer's education, all of which resulted in the neglect of Children. We conclude that given evidence presented at the hearings, it is unlikely that the outcome would have been different. Accordingly, there was no due process violation under the circumstances of this case.

**{27}**     Because Mother has not demonstrated that her counsel was ineffective at the custody hearing or that she was denied due process, the adjudicatory judgment and TPR judgment are both affirmed.

**Conclusion**

**{28}**     For the foregoing reasons, we affirm.

**{29}     IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**